# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 00-1081

———————

Thomas O. Yates,

    Plaintiff - Appellant,

v.

Rexton, Inc.,

    Defendant - Appellee.

\*
\*
\*
\*  Appeal from the United States
\*  District Court for the
\*  District of Minnesota.
\*
\*
\*

———————

Submitted:  November 13, 2000

Filed:  October 5, 2001

———————

Before MORRIS SHEPPARD ARNOLD and JOHN R. GIBSON, Circuit Judges, and GOLDBERG,[1] Judge.

———————

JOHN R. GIBSON, Circuit Judge.

Thomas Yates appeals from the entry of summary judgment on his age discrimination claim against Rexton, Inc. Yates alleges that Rexton terminated his employment in violation of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621-634 (1994 & Supp. IV 1998), and the Minnesota Human Rights Act,

_____

[1]The Honorable Richard W. Goldberg, Judge, United States Court of International Trade, sitting by designation.

Minn. Stat. § 363.03 (2000). Yates argues that the district court applied the wrong analytical framework and erred in its pretext analysis, that it improperly concluded that certain evidence submitted by Yates was inadmissible hearsay, and that it improperly made findings of fact in ruling on Rexton's summary judgment motion. We reverse and remand.

Because we are reviewing the entry of summary judgment, we view the facts in the light most favorable to Yates. Fast v. S. Union Co., 149 F.3d 885, 887 (8th Cir. 1998). Rexton manufactures and sells hearing aids. Yates co-founded the company in 1981 and was its first president. In 1986, he and the other Rexton shareholder sold the company to Siemens Hearing Instruments, Inc., a subsidiary of the German company Siemens AG. Following the sale, Yates no longer wished to be president of Rexton because he wanted to return to sales. He and Peter Daetz, the head of the hearing aid division at Siemens AG's corporate headquarters in Germany, agreed that Yates would become executive vice president of sales. John Zei became Rexton's president. In his new position, Yates managed Rexton's inside and outside sales forces.

In 1988, Rexton moved from Chicago to Plymouth, Minnesota, and the company recruited a new management team, engineers, technicians, and marketing and sales staff. Yates, one of the few Rexton employees to make the move, assisted in the recruitment.

Although Rexton's policy is that all employees are to receive regularly scheduled performance reviews with an accompanying written summary, Yates received no such reviews during his employment. According to Zei, the most important performance criterion for Yates was "how many did you sell and what price did you sell them at." Judged by that yardstick, Yates performed well. From 1988 to 1996, he was responsible for increasing Rexton's annual sales from $5 million in 1988 to $16 million in 1996. During that same time, Rexton's sales grew an average of 30 percent per year and the average selling price of an in-the-ear hearing aid rose from $179 to $302.

Yates received approximately $22,650 in merit pay increases and $157,469 in performance bonuses from Rexton during those years.

Zei was promoted in 1991 to become president of Siemens Hearing Instruments in New Jersey and chairman of the board of Rexton. While he was still in Minnesota as Rexton's president, Zei asked Yates if he had plans to retire and, in spite of Yates's denial, Zei told others that Yates would soon be retiring. Zei was replaced as president of Rexton by Brian Woodhurst, who was terminated by Hans Weckherlin, a managing director of Siemens AG, within a few months of his hiring. The next Rexton president, Delain Wright, remained in that position through the time Yates was terminated in 1996.

During his tenure, Wright had numerous conversations with Zei in which Zei expressed the need to get Yates removed as a Rexton employee. Zei attributed this decision to two Siemens AG officials in Germany: Weckherlin and Dr. Prigge, who were a managing director and a manager, respectively. According to Wright, Weckherlin and Prigge had told Zei that they were of the opinion that employees over age 60 should retire, and they believed that Yates would retire soon because of his age. Zei told Wright that he was authorized to enter into a consulting agreement with Yates, which Zei believed Yates would take because no other company would hire him at this time in his life.

Zei's pressure on Wright was documented in an August 13, 1994 memo stating: "We have discussed the issue of Tom Yates. You have a commitment to demonstrate that Tom is off the payroll and head count by the end of the year. You are authorized to keep him on in a consulting capacity." Zei and Yates corresponded directly about a potential consulting agreement. In a letter dated June 8, 1995, Zei rejected Yates's proposal and wrote that he had substantial concerns about Yates's performance. Yates responded a month later and referred to a June 20 lunch he had with Wright in which Wright assured him that there were "no issues" with his performance. Yates's letter

continued: "Indeed, not only have you and I never had a discussion about my performance, no one at Rexton (or Siemens, for that matter) has ever questioned my ability as a manager."

Wright told Yates in the spring of 1996 that he was going to hire Tom Cutting, age 35, to assist him in his duties. Although Wright asserts that Yates told him in the spring of 1995 that he intended to retire in two years, Wright also acknowledged that he became aware no later than the spring of 1996 that Yates had no such plans. Nevertheless, Wright sent Yates a memo on April 5, 1996, stating that he intended to bring Cutting on in early May as National Sales Manager. He intended for Cutting to begin with responsibility for inside sales, then gradually take on more responsibility for marketing and behind-the-ear hearing aid sales, and eventually take over all of Yates's duties.

On November 23, 1996, Wright terminated Yates at age 68. Cutting was then in charge of the inside sales force and Yates was responsible for marketing, behind-the-ear sales, and outside sales. Cutting never did assume all of Yates's responsibilities, as the supervision of outside sales fell to Wright.

Rexton asserts that Yates was part of an across-the-board reduction-in-force which resulted in the termination of eight employees. The average age of the terminated individuals, excluding Yates, was approximately 35. In a letter written by its attorney in response to the Equal Employment Opportunity Commission's request for information, Rexton took the position that Yates was included in the reduction-in-force because of poor performance: he was unable to successfully hire and retain field sales personnel; he failed to adequately review and control expense reports; he failed to follow up with training field sales personnel; he failed to develop meaningful sales plans and promotions; he failed to record business deals with customers and made poor decisions on business loans to customers; and he used abusive language and engaged in abusive behavior towards other employees.

-4-

Yates argues that these reasons are pretextual. He asserts that age was the reason for his firing and in support offers evidence from a variety of sources. He points to: comments made by Zei, Prigge, and Weckherlin expressing their opinion that Yates would and should retire because of his age; other Rexton and Siemens employees over fifty who were fired and replaced by much younger employees; ageist attitudes by Siemens management that, because of the control Siemens exercised over Rexton, were relevant to Yates's situation; and the promotion and retention of Tom Cutting.

I.

We review the district court's grant of summary judgment de novo, giving the non-moving party the benefit of any reasonable inferences. Britton v. City of Poplar Bluff, 244 F.3d 994, 996 (8th Cir. 2001). We affirm only where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fast v. S. Union Co., 149 F.3d 885, 889 (8th Cir. 1998).

Yates asserts that Rexton discriminated against him in violation of both federal age discrimination and Minnesota human rights laws. The district court applied the burden-shifting analysis of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), to both claims. Yates argues that the district court erred in applying that analysis, and that it should have used the mixed motives analysis of Price Waterhouse v. Hopkins, 490 U.S. 228 (1989). We understand Yates's argument to be that the district court should have found direct evidence of discrimination, thereby placing the burden on Rexton to prove that it would have made the same decision even if it had not taken the illegitimate reason into account. See Radabaugh v. Zip Feed Mills, Inc., 997 F.2d 444, 448 (8th Cir. 1993). In contrast, when the plaintiff presents indirect evidence, he or she must establish a prima facie case of discrimination before the burden of production shifts to the employer to produce evidence of a legitimate, non-discriminatory reason. The burden then shifts back to the plaintiff to show that the employer's explanation is

a pretext for discrimination.  The burden of persuasion remains with the plaintiff throughout.  Hutson v. McDonnell Douglas Corp., 63 F.3d 771, 776-77 (8th Cir. 1995).

The district court was correct in applying the McDonnell Douglas analysis, as Yates presented no direct evidence of discrimination.[2]  "Direct evidence is that which demonstrates a specific link between the challenged employment action and the alleged animus."  Kells v. Sinclair Buick-GMC Truck, Inc., 210 F.3d 827, 835 (8th Cir. 2000).  Although Yates argues that the statements of various Siemens managers about him specifically and about age in general constitute direct evidence, they do not.  Rexton presented evidence that Wright alone made the decision to include Yates in the reduction-in-force without input from Zei or anyone else.  In the face of a summary judgment motion, Yates is duty-bound to set forth specific facts that would be admissible in evidence showing that there is a genuine issue as to the independence of Wright's decision.  See Fed. R. Civ. P. 56(e).  Although the facts he put forth are relevant to a claim of pretext, they do not dispute Rexton's assertion that Wright alone decided that Yates would be included in the reduction-in-force.

Because Yates presented only indirect evidence of discrimination, McDonnell Douglas applies. The requirements Yates must satisfy in order to establish a prima facie case are stated somewhat differently because this is a reduction-in-force action.  Yates must show that (1) he is age forty or older; (2) he met the applicable job qualifications; (3) he was discharged; and (4) age was a factor in the employer's decision to terminate him.  Reynolds v. Land O'Lakes, Inc., 112 F.3d 358, 361 (8th Cir. 1997).  Ordinarily, replacement by a younger worker is sufficient to establish a prima facie case.  However, in recognition that duties have to be redistributed within the employer's

---

[2]The Minnesota Supreme Court has determined that the McDonnell Douglas analysis also applies to age discrimination claims in the employment arena which allege violation of the Minnesota Human Rights Act.  Anderson v. Hunter, Keith, Marshall & Co., 417 N.W.2d 619, 627 (Minn. 1988).

remaining workforce after a reduction-in-force, redistribution to a younger person is not circumstantial evidence of discrimination. Instead, in meeting his burden under the fourth factor, Yates must come forward with some additional evidence that age played a role in his termination. Fast, 149 F.3d at 890; see also Holley v. Sanyo Mfg., Inc., 771 F.2d 1161, 1165-66 (8th Cir. 1985).

The district court determined that Yates satisfied each of the four factors and that he therefore established a prima facie case. Rexton argues that Yates did not present additional evidence that age was a factor in his termination. As the district court noted, this Court has determined that the "additional showing" inquiry is not a significant hurdle for an employment discrimination plaintiff. Hutson, 63 F.3d at 778-79 ("The only question is whether the circumstances are such that, in the absence of an explanation from the defendant, a fact finder may reasonably infer intentional discrimination."). Yates presented evidence that Cutting was hired approximately six months before Yates was terminated with the idea that Cutting would assume all of Yates's duties in a little more than a year. Yates was chosen to be part of the reduction-in-force instead of Cutting. Finally, Yates presented evidence of numerous statements from Zei and more senior members of Siemens management which could allow a fact-finder to reasonably infer that Yates's firing was a result of age discrimination. Yates easily established a prima facie case.

II.

The district court determined that Rexton presented evidence to support its legitimate, non-discriminatory reasons for firing Yates: Yates was not performing satisfactorily, and he was part of a legitimate reduction-in-force. Accordingly, the burden then shifted back to Yates to demonstrate pretext. Yates argues that, once the analysis moved to the issue of pretext, the district court incorrectly applied that analysis and erroneously determined that Yates had not presented sufficient evidence to create a genuine issue of material fact.

-7-

Once the employer produces evidence of a non-discriminatory reason for its employment decision, the burden shifts back to the plaintiff to offer proof that would allow a rational fact-finder to conclude that the proffered reason was not the true reason for the employment action, and that age was. St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 507-08 (1993). In determining whether a plaintiff has met its burden with respect to pretext in a summary judgment motion, a district court is prohibited from making a credibility judgment or a factual finding from conflicting evidence. See El Deeb v. Univ. of Minn., 60 F.3d 423, 430 (8th Cir. 1995). In a reduction-in-force case, two additional general rules apply. The ADEA does not authorize a court to judge the wisdom of a company's business decision to reduce its workforce in response to economic pressures. See Holley v. Sanyo Mfg., Inc., 771 F.2d 1161, 1166 n.8 (8th Cir. 1985). However, even within the context of a legitimate reduction-in-force, an employer may not fire an employee because of his age. Carlton v. Mystic Transp., Inc., 202 F.3d 129, 136 (2d Cir. 2000).

Yates can avoid summary judgment in the face of Rexton's presentation of non-discriminatory reasons only if he presents evidence that (1) creates a question of material fact as to whether Rexton's proffered reasons are pretextual, and (2) creates a reasonable inference that age was a determinative factor in the adverse employment decision. Fisher v. Pharmacia & Upjohn, 225 F.3d 915, 921 (8th Cir. 2000). The evidence that is available for these inquiries includes the evidence that established Yates's prima facie case and the inferences properly drawn therefrom. Reeves v. Sanderson Plumbing Prods., Inc., 120 S. Ct. 2097, 2106 (2000).

We conclude that Yates created a question of material fact as to whether Rexton's proffered reasons for firing him are pretextual. Although Rexton argues that Yates's performance was unsatisfactory, Yates presented evidence to the contrary. Rexton's policy calls for employees to receive periodic performance reviews, but Yates received no such reviews during his employment. In a July 1995 letter to Zei, Yates reported that Wright had told him a few weeks earlier that there were "no issues" with

his performance. Yates also noted that no one at Rexton or at Siemens had ever questioned his ability as a manager. In his reply letter, Zei did not specifically address these statements.

Rexton's bottom line grew during Yates's tenure, as well. Rexton's sales grew an average of 30 percent a year for each of the five years prior to Yates's termination. According to Zei, the most important performance criterion for Yates (whom Zei supervised from 1987 until 1990) is "how many did you sell and what price did you sell them at." The average selling price of Rexton's in-the-ear hearing aid rose from $179 in 1988 to $302 in 1996. Under the standard articulated by Zei, Yates presented evidence creating a genuine issue of fact concerning his performance.

Similarly, we conclude that Yates created a reasonable inference that age was a determinative factor in his firing. In so doing, we are mindful that the fact-finder would be permitted to consider the evidence establishing Yates's prima facie case and inferences drawn from that evidence. Reeves, 120 S. Ct. at 2106. Zei, Prigge, and Weckherlin made numerous statements expressing their specific views about the need for Yates to retire and the more general view that workers should retire after age 60. Zei was president of Rexton for a time during Yates's employment, but he made most of his comments while he was a Siemens employee and was president of the board of Rexton. Prigge and Weckherlin occupied management positions with Siemens AG in Germany, the company Zei described as establishing the direction and setup of Rexton. The district court considered evidence Yates presented of Siemens AG's continued involvement in Rexton and concluded that Yates sufficiently demonstrated the former's influence over the latter so that the "interconnectedness" of the companies made Prigge's and Weckherlin's statements relevant.

The district court's determination is consistent with this court's treatment of comments demonstrating age animus. Assuming for the purposes of argument that Wright was the sole decision-maker as to Yates's termination, the comments of

Siemens' management could not themselves support a finding of discrimination. However, when the comments are considered along with other evidence of pretext, they may be sufficient to allow a fact-finder to reasonably infer age discrimination. See Kells v. Sinclair Buick-GMC Truck, Inc., 210 F.3d 827, 834-35 (8th Cir. 2000) ("When you get to [age 50], those things happen to you in our company" comment by person who had ownership interest in company but who did not participate in the decision to terminate the employee was properly considered as inferential proof of overt discrimination which, along with other evidence, raised an inference of illegal discrimination so as to preclude summary judgment); Ryther v. KARE 11, 108 F.3d 832, 842-44 (8th Cir. 1997) (discriminatory comments from fellow sports department employees about television sportscaster who was terminated were not sufficient to support finding of discrimination, but were relevant and combined with other evidence to support a reasonable inference of age discrimination). Neither this court nor the district court is permitted to substitute its judgment concerning the weight of the evidence for the fact-finder's. See Reeves, 120 S. Ct. at 2111.

Although the district court determined that the comments were relevant, it ultimately did not consider them because it found them to be "hearsay, not falling within any hearsay exception," and inadmissible as a matter of law. This ruling primarily included evidence Yates presented both as to Zei's own statements to Wright as well as Zei's statements to Wright which repeated comments by Prigge and Weckherlin.

We review the district court's exclusion of evidence in a summary judgment motion for abuse of discretion. Nat'l Steel Corp. v. Golden Eagle Ins. Co., 121 F.3d 496, 502 (9th Cir. 1997). The district court's ruling demonstrates an abuse of its discretion. These statements were not hearsay. According to Yates, Wright told him that Zei told Wright that Prigge and Weckherlin said that employees over age 60 should retire and that Prigge had targeted Yates because Weckherlin said he was retiring.

-10-

Although these include layers of out-of-court statements, each layer was admissible as a statement of a party opponent. See Fed. R. Evid. 805.

Some of the statements were also admissible because they were made by an agent of a party-opponent and therefore are not hearsay. See Fed. R. Evid. 802(d)(2)(D). The district court's determination that Prigge's and Weckherlin's statements were relevant because of the control Siemens exercised over Rexton plays a role in this analysis. We need not consider whether Prigge and Weckherlin were decision-makers with respect to Yates's termination because they were intimately involved in the process of shaping Rexton's work-force. For the purpose of determining whether Prigge and Weckherlin were "agents" under Rule 801(d)(2)(D), it is not necessary that they be the actual decision-makers. "Significant involvement, either as advisor or other participant in a process leading to a challenged decision," may be sufficient to establish agency under Rule 801(d)(2)(D). Equal Employment Opportunity Comm'n v. Watergate at Landmark Condo., 24 F.3d 635, 640 (4th Cir. 1994).

We conclude that the inter-connectedness of Rexton and Siemens is sufficient to establish that Prigge and Weckherlin were agents of Rexton in this evidentiary context. Our conclusion is consistent with an earlier ADEA case from our circuit, Bevan v. Honeywell, Inc., 118 F.3d 603 (8th Cir. 1997). In Bevan, the employer objected to the admission into evidence of remarks attributed to a decision-maker. The objection was two-fold: first, the employer argued that the comment was irrelevant to the employee's termination; second, the employer argued that it was double hearsay. We determined that the comment was admissible under Rule 801(d)(2)(D) because each layer of the out-of-court statement was a statement of a party opponent. Id. at 610-11.

Zei's statement to Wright that Yates would accept a consulting agreement because no one else would hire him at his age and Zei's statement to two fellow

-11-

employees that Yates was retiring were also admissible. Not only were these statements of a party opponent, but they were not hearsay because they were not offered for the truth of the matter asserted. Fed. R. Evid. 801(c); see Equal Employment Opportunity Comm'n v. HBE Corp., 135 F.3d 543, 552 (8th Cir. 1998) (in race discrimination case, hotel general manager's statements that hotel policy precluded hiring black waitresses or playing "black music" in hotel bar were not hearsay under Rule 801(c) because they were offered to show that the statements were made, not offered for the truth of the matter asserted).

We conclude that Yates created both a question of fact as to pretext and a reasonable inference that age was a determinative factor in his termination. Thus, even though Rexton set forth non-discriminatory reasons for its action, Yates provided sufficient evidence of pretext to avoid summary judgment.

Because our opinion results in the remand of this case for trial, we need not separately consider Yates's final argument that the district court erred in making findings of fact in its summary judgment ruling.

III.

For the reasons set forth above, we reverse the district court's entry of summary judgment in favor of Rexton and remand for trial on Yates's age discrimination claims.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.