**Oleta M. CARTER, Plaintiff,**

v.

**ARKANSAS DEPARTMENT OF HU-MAN SERVICES; Mona K. Davis, and Kimberly Schwartz, Defendants.**

No.  CIV.01–2110.

United States District Court,
W.D. Arkansas,
Ft. Smith Division.

Feb. 6, 2002.

---

Oleta M. Carter, pro se.

Frank J. Wills, III, for Defendants.

## MEMORANDUM OPINION & ORDER

DAWSON, District Judge.

This case is before the court on the defendants' motion for summary judgment filed on January 29, 2002, (Doc. # 45), and the plaintiff's motion for judgment on the pleadings filed on January 30, 2002. (Doc. # 49.) Plaintiff's remaining causes of action allege that her employment at the Arkansas Department of Human Services ("DHS") was terminated in violation of the Americans with Disabilities Act (ADA herein) 42 U.S.C. § 12101, et seq.; the Age Discrimination in Employment Act (ADEA) 29 U.S.C. § 621 et seq.; and two related Arkansas statutes prohibiting discrimination in employment based upon disability or age. Plaintiff also claims reimbursement for unpaid compensatory time and sick leave under the Fair Labor Standards Act (FLSA) 29 U.S.C. § 201 et seq. The defendants seek summary judgment on the grounds that Plaintiff was terminated during her probationary period for poor work performance. Defendants claim that Plaintiff is not disabled within the meaning of the ADA, and that Plaintiff can make no prima facie showing of discrimination under either the ADA or the ADEA. Defendants also assert that the FLSA claim is barred by the Eleventh Amendment of the United States Constitution.

Because the motion for summary judgment was filed only a few days before February 4, 2002, the date on which a jury trial of this matter had been scheduled, the Court canceled the jury and advised the parties that a hearing on the motion for summary judgment would be held instead. The plaintiff, Oleta Carter, who is representing herself, was requested to bring to the hearing any witnesses, affidavits or other evidence she would have the court consider in response to the defendants' motion for summary judgment.

The hearing was held, and the plaintiff, Oleta Carter, appeared on behalf of herself. Defendants appeared by and through their attorney, Frank J. Wills, III. Kimberly Schwartz and Mona Davis were also present at the hearing. After hearing the evidence and the arguments of counsel as stated on the Court record, the matter was taken under submission. For the reasons set forth within this memorandum, the defendants' motion for summary judgment will be granted, and the plaintiff's motion for judgment on the pleadings will be denied.

Jurisdiction to consider the ADA, the ADEA, and the FLSA claims is proper under the federal question statute, 28 U.S.C. § 1331. The Court has supplemental jurisdiction to hear the state law claims under 28 U.S.C. § 1367(a).

## I. Background.

The following facts are taken from the complaint and the evidence offered during the hearing. The court found Ms. Carter to be earnest and sincere in her claims and found her testimony to be credible. For purposes of ruling on the motion for summary judgment only, the Court accepts as true and as if properly presented, the plaintiff's summaries of what certain documentary evidence would show and various witnesses would say if called to testify in court. The court construes the facts in a light most favorable to the plaintiff, Ms. Carter.

Ms. Carter is over sixty years old. Some years ago, she was injured in a car accident, and she still experiences the lingering effects of injuries sustained to her neck, back, and shoulder. A note written in 1993 shows that Ms. Carter's doctor recommended that she work at a sedentary desk job using a posturpedic chair

and a wrist saver. Ms. Carter has had difficulty finding employment that allows her the flexibility to move around as needed and that does not require lifting.

Ms. Carter originally applied for a position with the Department of Human Services to work as an Independent Living Instructor teaching teenagers in foster care how to successfully function on their own in such matters as food preparation, shopping and budgeting. Ms. Carter claims she was qualified for this position because she had prior experience teaching these subjects while working for the Kansas State University Extension Service and the University of Arkansas Extension Service. On July 10, 2000, Ms. Carter was hired by the DHS as a Foster Parent Liaison, Social Service Aide II, Grade 13. One of the reasons Ms. Carter was hired for this position was that she had previously served as a foster parent in Oklahoma. The Foster Parent Liaison position required Ms. Carter to use a computer and several programs with which she was unfamiliar. Ms. Carter's supervisor was defendant Mona Davis. Ms. Davis told Ms. Carter to report to defendant, Kimberly Schwartz. Ms. Carter was informed she would be a probationary employee in training for six months.

Shortly after she began working as the Foster Parent Liaison, Ms. Carter had a conversation with Kimberly Schwartz wherein Ms. Schwartz told Ms. Carter that she had suggested that Ms. Carter be placed in the Foster Parent Liaison position. Ms. Carter thanked Ms. Schwartz for helping her to get the job with DHS, and went on to explain that it was hard for her to find a job she could do because of her back. Ms. Carter told Ms. Schwartz that she had a bad shoulder from an automobile accident and herniated discs in her neck and back which limited her work activity but that "this job she could do without any problems." Ms. Carter could

tell from the expression on Ms. Schwartz's face that she did not like the idea of Ms. Carter's disability.

Shortly after plaintiff disclosed her disability to Ms. Schwartz, Ms. Carter began experiencing problems that prevented her from doing her job or made it look like she was not doing her job, to include the following:

- Ms. Carter had recurring problems with her computer. Defendants told Ms. Carter that she was not to directly contact the DHS employee responsible for assisting with computer problems or ask anyone else for assistance. Instead, Ms. Carter was to report her problems to Ms. Schwartz or Ms. Davis. Because Schwartz and Davis were out of the office most of the time, Ms. Carter had numerous problems performing her duties.

- Ms. Carter asked for training classes in Microsoft Word and Excel. Although computer classes were routinely provided on site to other DHS employees, Ms. Carter never received any formal training.

- Ms. Carter was told by defendant Mona Davis to take all instruction from and to turn work into Ms. Schwartz. Ms. Carter alleges that completed work assignments were turned into Ms. Schwartz who failed to forward them on to Ms. Davis.

- One of Ms. Carter's assignments was to contact all foster parents in the seven county area and find out if they had CPR training. Ms. Carter contacted by telephone all those who were home during business hours, but many of the parents worked at that time. When she asked for permission to stay after 5:00 p.m. to contact working foster parents, the request was denied by Ms. Schwartz. When Ms. Carter asked to take the names and phone

numbers home to make the calls, Ms. Schwartz told her it was against company policy. Because of this, Ms. Carter was unable to contact by telephone all the foster parents as instructed.

- Ms. Carter's employment file erroneously reflects an unauthorized absence from work on July 21, 2000. While Ms. Carter was absent that day, July 21st was her birthday, and she had previously discussed taking the day off with Ms. Schwartz.
- Ms. Carter's employment file incorrectly states that she worked only one complete week without taking time off without pay since she was hired.

Because the Foster Parent Liaison position would occasionally require Ms. Carter to drive a state-owned vehicle, Ms. Carter was asked to fax a copy of her driver's license to the Little Rock DHS office. She had to make several attempts because the date of birth was unreadable. Finally, she was able to transmit a clear copy of her military I.D. card which contained the date of birth information. Ms. Carter believes that once her age was evident, it became an additional factor in the defendants' discriminatory actions. In addition, a 20–year–old woman was given the Independent Living Instructor position for which Ms. Carter had applied but had not been hired.

Ms. Carter was terminated from her job on October 13, 2000. The actual termination was done by defendant Mona Davis, but defendant Kimberly Schwartz was present during the "exit interview." Ms. Davis told Ms. Carter she was being fired because she failed to complete two assignments. When Ms. Carter asked for specifics, the only assignment mentioned was the one in which she was to contact the foster parents. Ms. Carter tried to explain why she had not been able to complete the assignment. She also tried to tell Ms. Davis a Few things she had suc-cessfully completed with regard to the assignment, but Ms. Davis would not listen to or believe her. Ms. Carter asked for more time to prove herself, or, alternatively, to be transferred to the Independent Living position for which she had originally applied. These requests were denied. Ms. Carter then explained that she wanted to keep her job because it was so hard to find one she could do as she was disabled. She told Ms. Davis that she needed a job because her husband was confined to a wheel chair and couldn't work. Ms. Davis refused to change her mind, and Ms. Carter was terminated.

Ms. Carter has not been paid for accrued annual leave and compensatory time even though she has called and written. The State of Arkansas and DHS provide a procedure for former employees to file claims for unpaid compensatory time and annual leave. Ms. Carter has not filed a proper claim using the available procedure.

Ms. Carter filed a charge of employment discrimination with the Equal Employment Opportunity Commission (EEOC). After receiving a right to sue letter, Ms. Carter filed this lawsuit. In her complaint, Ms. Carter alleges that defendants violated the ADA, the ADEA, the Arkansas Civil Rights Act, the Arkansas Age Discrimination Act, and the FLSA. Ms. Carter seeks reinstatement to a permanent position with the DHS in Crawford County and back pay. In the alternative, Ms. Carter requests $300,000.00 in compensatory, exemplary and punitive damages.

## II. The Summary Judgment Standard.

The court should grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of

law." Fed.R.Civ.P. 56(c). A fact is material only when its resolution affects the outcome of the case. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. *Id.* at 252, 106 S.Ct. at 2512. The court views the evidence in favor of the nonmoving party, giving that party the benefit of all justifiable inferences that can be drawn in its favor. If reasonable minds could differ as to the import of the evidence, judgment should not be granted. *Id.* at 250–51, 106 S.Ct. at 2511–12. However, the nonmoving party must set forth specific facts, by affidavit or otherwise, sufficient to raise a genuine issue of material fact for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).

### A. Plaintiff's ADA Claim.

■ The *McDonnell Douglas* burden shifting formula provides that when a plaintiff presents indirect evidence of discrimination, she must establish a prima facie case of discrimination before the burden of production shifts to the employer to produce evidence of a legitimate, non-discriminatory reason for terminating the plaintiff's employment. The burden then shifts back to the plaintiff to show that the employer's proffered explanation is a pretext for discrimination. The burden of persuasion remains with the plaintiff throughout. *See McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). To establish a prima facie case of disability discrimination under the ADA, a plaintiff must show: (1) that she is a disabled person within the meaning of the ADA; (2) that she was qualified to perform the essential functions of her position; and (3) that she suffered an adverse employment decision under circumstances that give rise to an inference

of discrimination. *See Taylor v. Southwestern Bell Telephone Co.,* 251 F.3d 735, 739 (8th Cir.2001).

■ In order to prove disability status, the first element of a prima facie case under the ADA, Ms. Carter must offer evidence that she has a permanent or long-term impairment that prevents or severely restricts her from doing activities that are of central importance to most people's daily lives. *Toyota Motor Mfg., Ky., Inc. v. Williams,* 534 U.S. 184, 122 S.Ct. 681, 151 L.Ed.2d 615 (2002). "It is insufficient for individuals attempting to prove disability status under this test to merely submit evidence of a medical diagnosis of an impairment." *Id.* Ms. Carter's claim under the ADA fails primarily because she has presented no evidence of a disability that rises to the standard set out by the Supreme Court in the *Toyota Motor* case. With regard to disability status, the only evidence submitted was the doctor's note from 1993 diagnosing Ms. Carter's impairments and setting out a few work restrictions. Nothing in that note suggests that Ms. Carter is prevented or severely restricted from doing activities that are of central importance to most people's daily lives. Therefore, the evidence does not establish the existence of a disability as that word is defined in the Act.

■ The ADA claim fails also because there is a lack of evidence establishing the third element of a prima facie case of discrimination. That is, there was no evidence from which a reasonable person could conclude that Ms. Carter was fired under circumstances that create a justifiable inference of discrimination. Ms. Carter bases her conclusion that she was fired because of her disability upon two things: (1) the "look" on Ms. Schwartz's face when Ms. Carter disclosed her back, neck and shoulder injuries; and (2) the fact that she began to experience problems at work

shortly thereafter. There was no evidence from which one could conclude that Mona Davis, the supervisor who actually fired Ms. Carter, was even aware of Ms. Carter's impairments at the time of the termination. In addition, any evidence showing that Ms. Carter had no problems at work until after she made known her physical impairments to Ms. Schwartz is insufficient to establish that disability discrimination caused Ms. Carter's treatment at work to change for the worse. Although we do not know exactly when the disclosure was made, Ms. Carter was only employed by DHS for a total of three months, and she was a probationary employee in training during that time. There simply is not enough employment history available to establish a "baseline" with which the later treatment may be compared. Therefore, it is not reasonable to infer that unlawful discrimination played a part in Ms. Carter's "before and after" circumstances.

■ Plaintiff did present evidence showing that defendants' asserted reasons for terminating her employment were false. However, evidence of pretext is only relevant when a prima facie case has been made. Pretext alone is insufficient to create a jury question on the issue of disability discrimination. As the plaintiff has failed to create a genuine issue of fact with regard to the elements of a prima facie case of disability discrimination, the motion for summary judgment on the ADA claim will be granted.

### B. Plaintiff's ADEA Claim.

■ As with all employment discrimination claims, the relevant question in an age discrimination case is whether the plaintiff was the victim of unlawful, intentional discrimination. For that reason, it is not surprising that the analysis for age discrimination is nearly the same as the analysis for other types of discrimination. *See*

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000). A prima facie case of age discrimination together with sufficient evidence of pretext is adequate to create a genuine issue of fact with regard to liability for intentional discrimination. *Sanderson Plumbing, id.* In order to establish a prima facie case of age discrimination based upon indirect evidence a plaintiff has the burden of showing that: (1) she is age forty or older; (2) she met the applicable job qualifications; (3) she was discharged; and (4) age was a factor in the employer's decision to terminate her. *Yates v. Rexton, Inc.*, 267 F.3d 793, 799 (8th Cir.2001).

■ Applying this framework to Ms. Carter's case, the court finds that there is no evidence from which a reasonable person could conclude that age had anything to do with defendants' decision to discharge Ms. Carter from her position. Ms. Carter was only three months older at the time she was terminated than she was at the time of hiring. If defendants' Schwartz or Davis harbored any discriminatory feelings toward persons over forty, they likely would not have offered the position to Ms. Carter in the first place. Similarly, the fact that Ms. Carter was repeatedly asked to fax to the DHS office in Little Rock a copy of her driver's license with her date of birth clearly legible is of no consequence, because her employment position required her to drive a state owned vehicle from time to time. As the employer, DHS was entitled not only to verify that she possessed a legally valid driver's license, but also that driver control records did not disclose any outstanding citations or warrants. Finally, the fact that a twenty-year-old was hired for a position that Ms. Carter never had is not

relevant, especially since there is no evidence that Ms. Carter was replaced in the Foster Parent Liaison position by someone under the age of forty. As there is no evidence from which a reasonable person could infer that Ms. Carter was terminated because of her age, the motion for summary judgment will be granted with regard to the ADEA claim.

### C. Plaintiff's FLSA Claim.

■ With regard to the FLSA claim for unpaid leave and compensatory time, that claim is barred by the 11th Amendment. *See Moad v. Arkansas State Police Dept.*, 111 F.3d 585 (8th Cir.1997). Accordingly, summary judgment will be granted with regard to the FLSA claim. Although Ms. Carter is not required to take this Court's advice, we think she would be wise to follow the procedure provided by the State of Arkansas for making a claim for unpaid leave and compensatory time before resorting to any more lawsuits.

### D. Plaintiff's claims under Arkansas state law.

Since the court intends to dismiss the claims over which it has federal question jurisdiction, we will decline to exercise supplemental jurisdiction over the State law claims. *See* 28 U.S.C. § 1367(c)(3). Accordingly, Ms. Carter's claims for disability discrimination under the Arkansas Civil Rights Act of 1993 and age discrimination under to the Arkansas Age Discrimination Act will be dismissed.

### III. Plaintiff's Motion for Judgment on the Pleadings.

■ Plaintiff's motion is based upon the numerous difficulties she encountered during the discovery phase of her lawsuit. Ms. Carter states, and defendants' trial counsel does not deny, that her phone calls were not returned and requested documents were not provided until after she filed a motion to compel. We do not con-

done the manner in which this case was handled by the defendants' attorneys. It certainly is not a model of professionalism or skill. However, this court is also aware of the negative impact significant cuts in the State budget have upon DHS operations. While at the time of the hearing Ms. Carter was still lacking some of the documentary evidence requested during discovery, after inquiry we do not believe that the evidence was particularly relevant or that it could have affected the outcome of this case. Accordingly, the motion for judgment on the pleadings will be denied.

### ORDER

Plaintiff's motion for judgment on the pleadings, (Doc. # 49), is DENIED.

The motion for summary judgment, (Doc. # 45), should be and hereby is GRANTED with respect to plaintiff's claims under the ADA, the ADEA, and the FLSA, and those claims are dismissed with prejudice. The remaining State law claims are also dismissed pursuant to 28 U.S.C. § 1367(c)(3).

IT IS SO ORDERED.