Patrick J. GOLDEN, Plaintiff,

v.

THE CRETEX COMPANIES, INC., Defendant.

Civil No. 03–3253(DSD/SRN).

United States District Court, D. Minnesota.

Aug. 24, 2004.

Daniel S. Goldberg, Douglas A. Hedin, and Hedin, Goldberg & Glidden, P.A., Minneapolis, MN, for plaintiff.

David J. Lauth, Jennifer A. Dellmuth, and Dorsey & Whitney, Minneapolis, MN, for defendant.

## ORDER

DOTY, District Judge.

This matter is before the court upon defendant's motion for summary judgment. Based upon a review of the file, record and proceedings herein, and for the reasons stated, the court denies defendant's motion.

## BACKGROUND

This is an action under the Age Discrimination in Employment Act of 1967 ("ADEA"),[1] the Minnesota Human Rights Act ("MHRA")[2] and the Minnesota Dismissal for Age statute.[3] Defendant Cretex

---

1. ADEA provides that "[i]t shall be unlawful for an employer ... to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age ...." 29 U.S.C. § 623(a)(1).

2. MHRA provides that "[e]xcept when based on a bona fide occupational qualification, it is an unfair employment practice for an employer, because of race, color, creed, religion, national origin, sex, marital status, status with regard to public assistance, membership or activity in a local commission, disability, sexual orientation or age to ... discharge an employee." Minn.Stat. § 363A.08, subd. 2(b).

3. The Minnesota Dismissal for Age statute provides that "[i]t is unlawful for any private sector employer ... to discharge ... any indi-

Companies, Inc., manufactures concrete pipe and other concrete products. From March 1, 1978, until April 28, 2003, defendant employed plaintiff Patrick J. Golden as a salesman. For nearly all that time, plaintiff was assigned to defendant's Elk River (Minnesota) Concrete Products Division.

In 2003, defendant reorganized its operations and laid off employees including plaintiff and other members of its sales staff.[4] According to defendant, the reorganization idea was conceived by its president and chief executive officer Tom Bender. Bender's goal was to restructure defendant's nineteen companies into approximately half as many.

On January 7, 2003, nine members of defendant's top management met as a strategic planning committee to discuss Bender's ideas. The nine organized themselves into three "focus groups," one of which was comprised of Bender, Lynn Schuler, president of defendant's pipe operation in Iowa, and Larry Koenig, president of the Elk River operation. This group considered how defendant's "pipe group" should be restructured and which positions should be eliminated. However, the group did not then consider which employees should be discharged.

The strategic planning committee held a second meeting on January 22, 2003. The committee decided to reform the pipe group into three companies, resulting in, among other things, a reduction of the number of salespeople at Elk River from eight to six.[5] It was decided that plaintiff should be one of the salespeople to go.

On February 19, 2003, Koenig and Don Schumacher, defendant's executive vice president, presented plaintiff with a separation agreement and told him he could have forty-five days to consider it. They explained that if he did not agree to accept defendant's offer, he would be entitled to thirty days notice plus vacation pay.

Plaintiff did not accept. Rather, he cleaned out his desk on April 7, 2003. Defendant later sent him a letter stating it considered his employment terminated. Plaintiff, age 60 at the time of his dismissal, filed a charge of age discrimination with the Minnesota Department of Human Rights and the Equal Employment Opportunity Commission on April 2, 2003. On May 22, 2003, plaintiff commenced this lawsuit. Defendant now moves for summary judgment.

## DISCUSSION

### I. Summary Judgment Standard

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In order for the moving party to prevail, it must demonstrate to the court that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (quoting Fed.

---

vidual on the grounds that the individual has reached an age of less than 70...." Minn. Stat. § 181.81, subd. 1(a).

**4.** The parties dispute whether the reorganization resulted in an overall reduction in defendant's sales staff at Elk River.

**5.** Again, whether this reduction was ever actually achieved is a disputed matter.

R.Civ.P. 56(c)). A fact is material only when its resolution affects the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. *See id.* at 252, 106 S.Ct. 2505.

On a motion for summary judgment, all evidence and inferences are to be viewed in a light most favorable to the non-moving party. *See id.* at 255, 106 S.Ct. 2505. The non-moving party, however, may not rest upon mere denials or allegations in the pleadings, but must set forth specific facts sufficient to raise a genuine issue for trial. *See Celotex,* 477 U.S. at 324, 106 S.Ct. 2548. Moreover, if a plaintiff cannot support each essential element of its claim, summary judgment must be granted because a complete failure of proof regarding an essential element necessarily renders all other facts immaterial. *Id.* at 322–23, 106 S.Ct. 2548.

## II. *McDonnell Douglas* Burden–Shifting Analysis

 The court examines all of plaintiff's claims simultaneously under the burden-shifting analysis first set forth in *McDonnell Douglas v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *See Chambers v. Metro. Prop. & Cas. Ins. Co.,* 351 F.3d 848, 855 (8th Cir.2003) (ADEA and MHRA claims both analyzed under *McDonnell Douglas* ); *Yates v. Rexton, Inc.,* 267 F.3d 793, 798–99 (8th Cir. 2001) (same); *Mayer v. Nextel W. Corp.,* 2001 WL 1586889, at *2 n. 1 (D.Minn. Dec.10, 2001) (claims under Minnesota Dismissal for Age statute analyzed under *McDonnell Douglas* ), *aff'd,* 318 F.3d 803 (8th Cir.2003), *cert. denied,* —— U.S. ——, 124 S.Ct. 153, 157 L.Ed.2d 43 (2003). The analysis proceeds in three steps. *See Chambers,* 351 F.3d at 855. First, plaintiff must establish a prima facie case of age

discrimination. *See id.* at 855. If plaintiff succeeds, the burden of production shifts to defendant to articulate a legitimate, non-discriminatory reason for its conduct. *See id.* at 856; *Mayer v. Nextel W. Corp.,* 318 F.3d 803, 807 (8th Cir.2003). If defendant offers such a reason, plaintiff must then demonstrate that the reason is really a pretext for unlawful discrimination. *See Chambers,* 351 F.3d at 855.

### A. Plaintiff's Prima Facie Case

 A prima facie case of age discrimination consists of four elements: (1) that the plaintiff was in the protected age group (over forty years of age), (2) that the plaintiff met the applicable job qualifications, (3) that the plaintiff was discharged and (4) that age was a factor in the employer's decision to terminate the plaintiff. *See Yates,* 267 F.3d at 799. Generally, a plaintiff satisfies the fourth element by showing that he was replaced by a younger worker. *See id.* at 799. In cases involving a reduction-in-force ("RIF"), however, the law recognizes that the plaintiff's duties must necessarily be distributed among the employer's remaining workforce. *See id.* at 799. Accordingly, redistribution of a plaintiff's duties to a younger person is not considered circumstantial evidence of discrimination. *See id.* at 799. Rather, a plaintiff "must come forward with some additional evidence that age played a role in his termination." *Id.* at 799 (citing *Fast v. S. Union Co.,* 149 F.3d 885, 890 (8th Cir.1998)).

 The "additional evidence" of discrimination offered by a plaintiff in a RIF case may take many forms. *See Bashara v. Black Hills Corp.,* 26 F.3d 820, 825 (8th Cir.1994); *Holley v. Sanyo Mfg., Inc.,* 771 F.2d 1161, 1166 (8th Cir.1985). Usually, however, the plaintiff satisfies the burden " 'by presenting either statistical evidence (such as a pattern of forced early retire-

ment or failure to promote older employees) or circumstantial evidence (such as comments and practices that suggest a preference for younger employees).'" *Chambers,* 351 F.3d at 856 (quoting *Hanebrink v. Brown Shoe Co.,* 110 F.3d 644, 646 (8th Cir.1997) (internal quotations omitted)); *see also Bashara,* 26 F.3d at 825; *Holley,* 771 F.2d at 1166.

■ In this case, defendant concedes that plaintiff is within the protected age group, that he was qualified for his position and that he was terminated. (Def.'s Mem. Law Supp. Mot. Summ. J. at 14.) Defendant argues, however, that it conducted a bona fide RIF and that plaintiff has offered no evidence that age was a factor in its decision to terminate him. (*Id.*) The court disagrees.

Assuming that defendant's RIF was bona fide, plaintiff has brought forth sufficient additional evidence to establish a prima facie case of age discrimination. Although other evidence appears of record, two items stand out. First, the manner in which defendant treated Jon Janda, another employee within the protected age group, gives rise to an inference of age discrimination in the reduction process. Janda, age sixty-eight at the time, testified at his deposition that his boss, Lynn Schuler,[6] told him on October 31, 2003, that he "was going to be retiring at the end of February [2004]." (Janda Dep. at 13.) Thereafter the following exchange was had between Janda and plaintiff's counsel:

> Counsel: When you had this discussion regarding your retiring, did Mr. Schuler ask you if you wanted to retire?
>
> Janda: It wasn't put to me that way.
>
> Counsel: How was it put to you?
>
> Janda: It was told that we were cutting the sales force to three, and I was going

to be retired at the end of February. That's the way I remember the conversation.

(Janda Dep. at 14–15.)

Schuler did not tell Janda that he was being laid off. Rather, Janda was "be[ing] retired." Schuler's choice of words, standing alone, could be dismissed as inadvertent. However, viewed in the context of subsequent events and in the light most favorable to plaintiff, a different conclusion is indicated.

On the morning of November 26, 2003, Janda received a call from Don Schumacher. (Janda Dep. at 25.) Schumacher told Janda that plaintiff intended to depose him in this lawsuit. (*Id.* at 26.) The two then discussed what Janda intended to testify about. (*Id.* at 27.) Janda told Schumacher that he never told anyone he wanted to retire and that he could not understand why anyone would think he wanted to retire. (*Id.* at 27–28.) Janda also related what occurred at his October 31 meeting with Schuler, to which Schumacher replied: "Wow, that does not sound good for the company." (*Id.* at 28.) That same afternoon, Schuler called Janda and told him that, if he did not want to retire, the company would "rearrange [its] thinking." (*Id.* at 32.) A reasonable jury could quite easily take this scenario as circumstantial evidence that defendant was conscious of its liability with respect to age discrimination in the execution of its reduction in force.

Second, Koenig's comments to plaintiff regarding defendant's alleged mandatory retirement policy give rise to an inference of age discrimination. On March 3, 2003, plaintiff met with Koenig to ask if he could stay on at Cretex. Plaintiff made an audio

---

**6.** Schuler was a member of the strategic planning committee that selected plaintiff for termination.

recording of the conversation. (*See* Dian Aff.) When plaintiff remarked that he intended to work until he was seventy, Koenig replied: "You couldn't work until you're seventy with Cretex because they're putting in a mandatory retirement age also." (Dian Aff. Ex. A at 12.) Koenig told plaintiff that, with respect to retirement:

> [T]hose decisions were taken right out of everybody's hands, I mean, its [sic] just the date that you're gonna retire and, you know, that, that includes me and that included others, you know. They were told, you know: "You're, these are the date starts. Get ready."

(*Id.* Ex. A at 13.) Koenig further remarked: "And it's not 65." (*Id.* Ex. A at 13.) When plaintiff pointed out that others in the company had worked until age sixty-five, Koenig observed that he was "not gonna go there because that's, you know, that was then this is now." (*Id.* Ex. A at 13.) Koenig's remarks, viewed in the light most favorable to plaintiff, provide circumstantial evidence that defendant's reduction in force was tainted by impermissible consideration of age.

## B. Defendant's Legitimate, Non-discriminatory Reasons

■ Because plaintiff has established a prima face case of age discrimination, it becomes defendant's burden to articulate a legitimate, non-discriminatory reason for plaintiff's termination. *See Chambers,* 351 F.3d at 856 (citing *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000)). "This burden is one of production; not persuasion; it 'can involve no credibility assessment.'" *Reeves,* 530 U.S. at 142, 120 S.Ct. 2097 (quoting *St. Mary's Honor Ctr. v.*

*Hicks,* 509 U.S. 502, 509, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993)).

■ Citing written evaluations and testimony from supervisors, defendant argues that it selected plaintiff for termination in its reduction in force because he performed poorly. Poor job performance is, of course, a legitimate, non-discriminatory reason to fire an employee. *See Yates,* 267 F.3d at 800.

## C. Evidence of Pretext

■ Accordingly, the burden shifts back to plaintiff to "offer proof that would allow a rational fact-finder to conclude that the proffered reason was not the true reason for the employment action, and that age was." *Yates,* 267 F.3d at 800 (citing *St. Mary's Honor Ctr.,* 509 U.S. at 507–08, 113 S.Ct. 2742). Plaintiff must present evidence that "(1) creates a question of material fact as to whether [defendant's] proffered reasons are pretextual, and (2) creates a reasonable inference that age was a determinative factor in the adverse employment decision." *Id.* at 800 (citing *Fisher v. Pharmacia & Upjohn,* 225 F.3d 915, 921 (8th Cir.2000)). This evidence may include "the evidence that established [plaintiff's] prima facie case and the inferences properly drawn therefrom." *Id.* at 800 (citing *Reeves,* 530 U.S. at 133, 120 S.Ct. 2097). However, as is always true under the summary judgment standard, the court may not make credibility judgments regarding conflicting evidence.[7] *See id.* at 800.

■ Plaintiff has carried his burden. Plaintiff has undermined defendant's claim that he performed poorly based on its written evaluations. Plaintiff has estab-

---

7. Furthermore, because this is a reduction-in-force case, two additional rules apply. The court may not judge the economic wisdom of defendant's decision to reduce its workforce. *Yates,* 267 F.3d at 800. "However, even with- in the context of a legitimate reduction-in-force, an employer may not fire an employee because of his age." *Id.* at 800 (citing *Carlton v. Mystic Transp., Inc.,* 202 F.3d 129, 136 (2d Cir.2000)).

lished that, prior to his discharge, he was never warned regarding poor performance based on the evaluations. (*See, e.g.,* Schumacher Dep. at 168–69.) Further, although defendant argues the evaluations were the main criteria against which it judged its sales force, the evaluations did not reflect the amount of sales its employees generated. (Schumacher Dep. at 120.)

Plaintiff has offered evidence that his sales numbers were better than those of employees defendant chose to retain. Plaintiff relies upon a memo issued to him and two other salesmen in February 2002. (Pl.'s Mem. Law Opp'n Def.'s Mot. Summ. J. at 5.) The memo reveals that, for each of the years 2000 through 2002, plaintiff had either the greatest dollar amount or, in 2000, within 1.4 percent of the greatest dollar amount of sales as compared against the other two salesmen. Defendant criticizes plaintiff's reliance on the memo, baldly asserting that "his sales were NOT superior than those of his peers." (Def.'s Reply Mem. Law Supp. Mot. Summ. J. at 5 n. 11 (emphasis in original).) Defendant, however, fails to offer any evidence in support of its contention. Nor does defendant offer any evidence of a good-faith belief on its part that plaintiff's sales numbers were inferior. Therefore, the court concludes that plaintiff has raised a genuine issue of material fact as to whether performance was the reason for his discharge.[8]

Plaintiff has also brought forth sufficient evidence to permit a reasonable inference that age was a determinative factor in his termination. This evidence includes, as earlier discussed, defendant's alleged mandatory retirement policy and its rush to undo Janda's layoff after it received notice of his deposition.

Defendant's explanation of its actions with respect to Janda as guided by a "misunderstanding" that he wanted to retire is wholly unpersuasive. First, if defendant thought it was permitting Janda to retire voluntarily, it would not have presented his termination to him on October 31 as a fait accompli. However, even assuming that the October 31 meeting was defendant's ham-fisted way of giving Janda what it thought he wanted, a minimally perceptive person would have noticed something was amiss when Janda immediately left the room declaring that he did not want to say anything he might later regret. Defendant, however, did not act promptly to learn the reason for Janda's behavior. Instead, defendant did nothing for nearly a month until plaintiff noticed Janda's deposition. Only then, after speaking with Janda and determining that what he had to say would "not sound good for the company" (Janda Dep. at 28), did defendant take corrective action.

Furthermore, defendant's argument that it could not have discriminated on the basis of age because it did not lay off fifty-nine-year-old Art Tobkin is not persuasive. As defendant itself points out, it knew in 2002 that Tobkin intended to retire voluntarily as early as April 2003. (Def.'s Reply Mem. Law Supp Mot. Summ. J. at 12.) Defendant would therefore have no reason to force him out in the RIF. Therefore, based on the evidence discussed above and other evidence that appears of record, the

---

8. The court's finding does nothing to undermine defendant's appropriate and correct observation that "[i]t is not unlawful for a company to make personnel decisions based on erroneous evaluations." *Evers v. Alliant Techsystems, Inc.,* 241 F.3d 948, 957 (8th Cir. 2001). An employer may base its personnel decisions on any and all factors unrelated to an employee's legally-protected status. Where, however, the employee brings forth sufficient evidence to permit the reasonable conclusion that the employer's decision was governed instead by impermissible considerations, the employer's motion for summary judgment must fail.

court determines that plaintiff has met his burden under the *McDonnell Douglas* analysis.

## CONCLUSION

Accordingly, **IT IS HEREBY OR-DERED** that defendant's motion for summary judgment [Docket No. 25] is denied.