United States Court of Appeals
FOR THE EIGHTH CIRCUIT

_____

No. 01-1045

_____

Equal Employment                          *
Opportunity Commission,                   *
                                          *
          Plaintiff/Appellant,            *    Appeal from the United States
                                          *    District Court for the Western
                                          *    District of Missouri
     v.                                   *
                                          *         [PUBLISHED]
Woodbridge Corp.,                         *
                                          *
          Defendant/Appellee.             *


_____

Submitted: June 14, 2001
Filed: August 24, 2001

_____

Before LOKEN, Circuit Judge, and ROSENBAUM[1] and DAWSON,[2] District
Judges.[3]

_____

DAWSON, District Judge

_____

[1]The Honorable James M. Rosenbaum, United States District Judge for the
District of Minnesota, sitting by designation.

[2]The Honorable Robert T. Dawson, United States District Judge for the
Western District of Arkansas, sitting by designation.

[3]Pursuant to 28 U.S.C. § 46(b), the Chief Judge certified the existence of a
judicial emergency necessitating the designation of a panel consisting of fewer than
two members of the Court of Appeals.

1

The Equal Employment Opportunity Commission appeals from the district court's grant of summary judgment to Woodbridge Corp. ("Woodbridge"). The issue is whether applicants for employment on a specific manufacturing line can be excluded from employment based upon test results that indicate those applicants may be susceptible to sustaining injuries from repetitive motion. The district court determined that the Americans with Disabilities Act ("ADA") was not violated as the applicants were not "disabled" as defined in 42 U.S.C. § 12102(2). We agree and affirm.

I.      **Background.**

The EEOC brought this action on behalf of nineteen workers at Woodbridge, a producer of polyurethane foam pads used in automobile seats, who were denied employment based upon the results of a test designed to reflect abnormal wrist neurometric readings. Woodbridge contended that the test was intended to determine those applicants who were more likely to develop carpal tunnel syndrome. The test was tailored for the repetitive motion required for those working on a specific foam line in the one plant in Kansas City. Several applicants were tested, and those applicants with abnormal neurometry readings were not hired for the foam line production position although they were considered to be eligible for jobs in other areas within the plant. The EEOC contended that Woodbridge discriminated against the nineteen applicants on the basis of a perceived disability, as Woodbridge regarded the applicants as substantially limited in the ability to work. The district court[4] granted summary judgment to Woodbridge and EEOC appeals.

---

[4]The Honorable Gary A. Fenner, United States District Judge for the Western District of Missouri.

**II.     Discussion.**

**A.     Standard of Review**

We review a district court's grant of summary judgment de novo and apply the same standard as the district court. *Rothmeier v. Inv. Advisers, Inc.*, 85 F.3d 1328, 1331 (8th Cir. 1996). Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(c); *Fisher v. Pharmacia & Upjohn*, 225 F.3d 915, 919 (8th Cir. 2000). Because discrimination cases often turn on inferences rather than on direct evidence, we are particularly deferential to the nonmovant. *Crawford v. Runyon*, 37 F.3d 1338, 1341 (8th Cir.1994). Notwithstanding these considerations, summary judgment is proper when a plaintiff fails to establish a factual dispute on an essential element of her case. See *Bialas v. Greyhound Lines, Inc.*, 59 F.3d 759, 762 (8th Cir.1995).

**B.     ADA Discrimination Claim**

The ADA defines disability as "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2). Major life activities include caring for one's self, performing manual tasks, walking, seeing, hearing, breathing, learning and working. 29 C.F.R. § 1630.2(i) (1998). In *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 492 (1999), the Supreme Court indicated, but did not specifically state, that working was a major life activity. The parties did not raise this issue, and we therefore assume for purposes of this decision that working is a major life activity.

An impairment is "substantially limiting" if it renders an individual unable to

perform a major life activity that the average person in the general population can perform, or if it significantly restricts the condition, manner, or duration under which an individual can perform a particular major life activity as compared to an average person in the general population. 29 C.F.R. § 1630.2(j)(1)(i)-(ii). The determination of whether an individual is substantially limited in a major life activity must be made on a case by case basis. *Fjellestad v. Pizza Hut of America, Inc.*, 188 F.3d 944, 949 (8th Cir. 1999) citing *Doane v. City of Omaha*, 115 F.3d 624, 627 (8th Cir. 1997), *cert. denied*, 522 U.S. 1048, 118 S.Ct. 693, 139 L.Ed.2d 638 (1998).

The EEOC contends that Woodbridge regarded the nineteen applicants as substantially limited in the major life activity of working. The district court rejected this contention stating that the "only documented perception of the applicants is that they were not physically qualified to perform the unique requirements of the Woodbridge manufacturing positions. This perception does not prevent the applicants from obtaining employment in a broad class of jobs."

A person is substantially limited in working if he is "significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills, and abilities." *Fjellestad*, 188 F.3d at 949 (8th Cir. 1999). The factors to be considered include: the number and type of jobs from which the impaired individual is disqualified; the geographical area to which the individual has reasonable access; and the individual's job training, experience, and expectations. *Fjellestad*, 188 F.3d at 949 (8th Cir. 1999) citing 29 C.F.R. § 1630.2(j)(3)(ii). This court has stated, "the ADA is concerned with preventing substantial personal hardship in the form of significant reduction in a person's real work opportunities." *Webb v. Garelick Manufacturing Co.*, 94 F.3d 484, 488 (8th Cir. 1996). A court must ask if a person's particular impairment constitutes a significant barrier to employment in a class of jobs or a broad range of jobs. *Id.* The person's expertise, background, and

4

job expectations are relevant in defining the class of jobs used to determine whether the person is disabled. *Id.*

The facts alleged by the EEOC are insufficient to show that Woodbridge regarded these nineteen applicants as being substantially limited in working. The test was conducted on all applicants, and some of those who received abnormal results were employed in jobs other than the foam production jobs which were sought by these nineteen applicants.[5] While it may be desirable for a test to be designed and administered that could determine an activity that may prove harmful, that is not the issue before us. There are groups, to include some governmental agencies, who would state that a worthwhile goal for an employer would be to develop protocols that would limit injuries in the workplace and to include tests designed to determine those who may be predisposed to such injuries.

The issue is whether the nineteen applicants were regarded as "significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skill, and abilities. The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working." 29 C.F.R. § 1630.2(j)(3)(i).

In order to find that an individual is substantially limited in working, there must be a showing that his or her overall employment opportunities are limited. *Fjellestad*, 188 F.3d at 949 (8th Cir. 1999) citing *Miller v. City of Springfield*, 146 F.3d 612, 614 (8th Cir. 1998). One must be precluded from more than one type of

---

[5]The test administered by Woodbridge is no longer used as there were concerns by the company about its reliability.

job, a specialized job, or a particular job of choice. *Sutton*, 527 U.S. at 492 (1999). If jobs utilizing an individual's skills (but perhaps not his or her unique talents) are available, one is not precluded from a substantial class of jobs. *Id.* Similarly, if a host of different types of jobs are available, one is not precluded from a broad range of jobs. *Id.*

The evidence in this case, when construed in the manner most favorable to the EEOC, reflects that the test administered was specifically designed for the activities required on a specific foam line job in a specific plant. An employer that regards an individual as having an impairment that disqualifies him or her from a narrow range of jobs does not regard him or her as substantially limited in the major life activity of working. *See Wooten v. Farmland Foods,* 58 F.3d 382, 386 (8th Cir. 1995).

The neurometric test, however faulty, was an effort to screen out individuals who were likely to become disabled or sustain an injury while performing one specific type function on one foam line in one plant. As such, the EEOC's argument that Woodbridge regarded these nineteen applicants as substantially limited in their ability to work must fail. The evidence shows that Woodbridge only regarded the nineteen applicants as unable to perform one particular specialized job at one particular plant. It did not regard these applicants as unable to perform any other job which required repetitive motion as evidenced by the fact that it employed some applicants with abnormal test results in positions other than the foam production line.

## III.   Conclusion.

We find that these nineteen individuals were not precluded from more than one type of specialized job, and summary judgment is affirmed.

A true copy.

Attest:

      CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.