**Eileen M. SIMONSON, Plaintiff,**

v.

**TRINITY REGIONAL HEALTH SYSTEM et al., Defendants.**

**No. C00–3065–MWB.**

United States District Court,
N.D. Iowa,
Central Division.

Sept. 16, 2002.

Michael J. Carroll, Coppola, Sandre, McConville & Carroll, PC, West Des Moines, IA, for plaintiff.

Stuart J. Cochrane, Johnson, Erb, Bice, Kramer, Good & Mulholland, PC, Fort Dodge, IA, for defendants.

**MEMORANDUM OPINION AND ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

BENNETT, Chief Judge.

### TABLE OF CONTENTS

I. INTRODUCTION ................................................ 984
 A. Procedural Background ............................... 984
 B. Disputed and Undisputed Facts ...................... 984

II. STANDARDS FOR SUMMARY JUDGMENT ............................... 987

III. LEGAL ANALYSIS ............................................. 988
 A. Simonson's Disability Claims ........................ 988
 1. Perceived disability claim: 42 U.S.C. § 12102(2)(C) ................... 990
 2. Record of disability ............................ 993
 B. Simonson's ADEA Claim ............................... 993
 C. Discharge in Violation of Public Policy Claim ....... 995

IV. CONCLUSION ................................................. 999

This matter is before the court on the Defendants' Motion for Summary Judgment filed on July 9, 2002. Plaintiff complains she was discriminated against in the terms, conditions, and compensation of her employment with the defendants and in violation of state public policy. Specifically, the plaintiff alleges the defendants discriminated against her, and subsequently discharged her, as well as failed to transfer or rehire her because of her age; a perceived disability or record of such an impairment; and in retaliation for her seeking workers' compensation benefits in violation of Iowa public policy. The defendants dispute these allegations and contend that judgment should be entered in their favor as a matter of law and against the plaintiff for the following reasons: (1) the plaintiff does not establish that age was a factor in her discharge or that defendants filled plaintiff's position with younger employees after her position was eliminated due to a reduction-in-force; (2) the plaintiff is not disabled within the meaning of the American with Disabilities Act, nor did the defendants regard plaintiff as disabled; and (3) there was no causal connection between plaintiff's pursuit of her workers' compensation rights and defendants' reduction-in-force and the consequent elimination of plaintiff's positions with defendants, but for legitimate business reasons.

## I. INTRODUCTION

### A. Procedural Background

On August 18, 2000, the plaintiff, Eileen Simonson ("Simonson"), filed a complaint against her former employer, Trinity Regional Health System and Trinity Regional Hospital of Fort Dodge, Iowa (hereinafter "Trinity"), alleging violations of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 623, et seq., the Americans With Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq., the Iowa Civil Rights Act ("ICRA"), chapter 216 of the Iowa Code, and Iowa public policy. Simonson's state law claims are properly before the court pursuant to 28 U.S.C. § 1367 (supplemental jurisdiction). Prior to bringing this action in federal court, Simonson exhausted her administrative remedies by filing a charge with the Iowa Civil Rights Commission ("ICRC"), which was cross-filed with the Equal Employment Opportunity Commission ("EEOC"), and received right-to-sue letters. Pl.'s Comp., at 2.

A trial in this matter is presently scheduled for October 21, 2002. Ms. Simonson is represented by Michael Carroll of Coppola, Sandre, McConville & Carroll P.C., West Des Moines, Iowa. Trinity is represented by Stuart Cochrane of Johnson, Erb, Rice, Kramer, Good & Mulholland, P.C., Fort Dodge, Iowa.

### B. Disputed and Undisputed Facts

The following is a summary of Simonson's work history with Trinity and the events allegedly giving rise to her termination and the present lawsuit. Simonson worked for Trinity from approximately January 1972 until her employment was terminated on September 29, 1999. During her tenure with Trinity, Simonson worked primarily as a full-time, registered nurse. However, a series of work-related injuries caused Simonson to be placed under work restrictions prescribed by a physician, and in turn required Trinity to accommodate Simonson.

In January 1994, Simonson sustained an injury to her shoulder that required surgery in April 1994. Trinity modified Simonson's work responsibilities and Simonson's physician permitted her to return to work part-time, with restrictions, and eventually in July 1994, authorized her to work on Trinity's Two North hospital wing conducting new employee orientation and

engaging in limited physical activity. Def.'s App., at 070. When Simonson's physician refused to release her to regular full-time duty in October 1994, Trinity nurse manager, Peg Stoolman, and Human Resources Manager, Ted Vaughn, asked Simonson to work full-time on a computer project called PHAMIS. Simonson and Trinity agree this was not a demotion, and Trinity continued to compensate Simonson at the same rate as it had previously, when Simonson was assigned to Two North. Def.'s App., at 070. Simonson continued work on the PHAMIS project until its completion in September or October 1997, at which time she was offered a part-time nursing position in skilled care (Two West). Def.'s App., at 066. However, Simonson was not under physician's restrictions, rather Trinity asserts there were no full-time job positions available in Two North at the time and Simonson acknowledges that there were no full-time job postings for nursing positions in Two North, but contends that when she accepted the PHAMIS position, Ted Vaughn assured her that Trinity's intent was to return her to Two North at the completion of the PHAMIS project. Def.'s App., at 070.

In April 1998, while working in skilled care as a nurse, Simonson alleges she injured her back and was diagnosed with sciatica, but continued working without restriction. However, due to continued pain, Simonson was placed on a twenty-five pound lifting restriction in May 1998, until June 12, 1998, when she returned to regular duty. The next incident, Simonson alleges, took place on June 24, 1998, when she injured her left arm at work and was diagnosed with left lateral epicondylitis. Simonson's physician placed her on a fif-

teen pound lifting restriction which was eventually decreased to ten pounds, and Simonson finally returned to regular duty on August 29, 1998.

Trinity and Simonson agree that while Simonson was moving a patient in September 1998, Simonson suffered an upper back strain and consequently was diagnosed with a shoulder impingement. After attempting to work without restriction, Simonson was placed on a ten pound lifting restriction that was increased to thirty-five pounds in December 1998. The physician released Simonson to regular full-time duty in January 1999.[1] After returning to work from a leave of absence to care for her husband, Simonson claims she learned that Two West was closing. Thereafter, Trinity employed Simonson in a temporary position as an IDX patient registration clerk, until her termination in September of 1999. Even as a temporary employee, Simonson continued to be compensated at the same rate as she had been when she worked as a nurse in Two West.

Simonson does not complain that Trinity acted in a discriminatory manner or targeted her when it closed Two West, when it eliminated her job on Two West, or when her temporary employment position with IDX was eliminated. Def.'s App., at 073. Simonson concedes that Trinity took these steps for legitimate business reasons. Def.'s App., at 070. In addition, Simonson does not claim that Trinity failed to accommodate her physical restrictions, and to the contrary, acknowledges that Trinity made every effort to follow the physician's suggestions and recommendations. Def.'s App., at 073. Simonson also concedes that Trinity never disciplined her

---

1. Simonson states in her Resistance to Defendants' Motion for Summary Judgment that her physician increased her lifting restriction to a maximum of ten to twenty pounds, Pl.'s Resistance to Summary Judgment, at 4, but

Simonson's response to Trinity's Statement of Undisputed Material Facts No. 6, admits that her physician placed her on a thirty-five pound lifting restriction.

as a result of any work-related injury that she sustained or with regard to her application for and receipt of worker's compensation benefits for her injuries. Def.'s App., at 072.

In contrast, Simonson alleges that because of her history of work-related injuries, she meets the definition of "disabled" under the ADA either because she has a record of impairment or she was regarded by Trinity as having such an impairment. However, Simonson does not contend that she suffers from a physical impairment that substantially limits her ability to perform any major life activity. Further, Simonson asserts that after Two West closed, Trinity reassigned all seventeen Two West employees except for Simonson and Simonson's co-worker, Betty Berning. Trinity maintains that all Two West employees were terminated and subsequently rehired, if at all, only after they made application and interviewed for job openings. Simonson contends that Trinity has a history of reassigning people within the hospital and chose not to reassign her because of her age, despite the fact that there were twelve job openings at the time of Simonson's termination. Moreover, Simonson argues that Trinity's purported reason not to rehire her was not the result of a reduction-in-force (RIF) and she should not be held to a higher standard of proof. *Yates v. Rexton, Inc.*, 267 F.3d 793, 799 (8th Cir.2001) (stating replacement by younger worker is not circumstantial evidence of discrimination in RIF case and requiring additional evidence of age discrimination). Simonson also alleges that Trinity terminated her employment because she made workers' compensation claims in the past and she was contemplating making further claims at the time Trinity terminated her.

While Trinity does not dispute Simonson's allegations regarding her physical limitations for purposes of this motion, Trinity contends that Simonson's restrictions fail to meet the definition of a disability and thus, no record of impairment can exist because Simonson's injuries were temporary in nature, and permanent injuries, if any, were slight. Trinity points to the fact that Simonson is currently employed in three separate nursing-related positions as proof that she is not limited in a major life activity. In addition, Trinity avers that Simonson fails to produce evidence establishing that Trinity perceived her as having such an impairment. Instead, Trinity argues that the only evidence on record indicates that Simonson was not under any physical restrictions or suffering a physical malady at the time of her termination, and in Trinity's opinion, "There is a distinction between being regarded as an individual unqualified for a particular job because of a limiting physical impairment and being regarded as 'disabled' within the meaning of the ADA." *Conant v. City of Hibbing*, 271 F.3d 782, 785 (8th Cir.2001).

Trinity disputes Simonson's allegations that her employment was terminated because of her age in violation of the ADEA and argues that Simonson fails to prove Trinity acted with discriminatory animus when it eliminated both her positions in Two West and IDX and declined to rehire her in another capacity. There is evidence in the record that Trinity managers, who interviewed Simonson, declined to make her a job offer, because they were told by Simonson's former managers and co-workers that she was lazy, had a high absenteeism rate, was not dependable, and not a team player. Def.'s App., at 98, 113, 123. Trinity alleges that Simonson offered no evidence that it hired younger persons to fill Simonson's former positions, and alternatively, that Simonson's termination was the result of a reduction-in-force which requires Simonson to produce additional evidence that age was a factor in Trinity's

decision to terminate her. Finally, Trinity contends that it did not rehire Simonson for legitimate business reasons, specifically financial reasons rather than in retaliation for pursuing a workers' compensation claim. Def.'s App., Aff. of Ted Vaughn, at 136. Trinity points out that at the time it terminated Simonson's employment, she was not under any physician's restrictions, pursuing any worker's compensation claims, nor did Trinity have any knowledge of an intent on Simonson's part to pursue such claims in the future.

## II. STANDARDS FOR SUMMARY JUDGMENT

Summary judgment is appropriate when the court after viewing all of the facts, and inferences drawn from those facts, in the light most favorable to the non-moving party, and giving that party the benefit of all reasonable inferences that can be drawn from the facts, concludes there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *See Dropinski v. Douglas County, Neb.,* 298 F.3d 704, 706 (8th Cir.2002); *P.H. v. Sch. Dist. of Kansas City, Mo.,* 265 F.3d 653, 658 (8th Cir.2001) (nonmoving party, "is entitled to all reasonable inferences-those that can be drawn from the evidence without resort to speculation.") (quoting *Sprenger v. Fed. Home Loan Bank of Des Moines,* 253 F.3d 1106, 1110 (8th Cir. 2001)) (internal quotations omitted); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The court's function at the summary judgment stage of the proceedings is not to "to weigh evidence in the summary judgment record to determine the truth of any factual issue; we merely determine whether there is evidence creating a genuine issue for trial." *Bell v. Conopco, Inc.,* 186 F.3d 1099, 1101 (8th Cir.1999) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–51, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).

According to Rule 56(e), once the moving party files a properly supported motion for summary judgment, the burden shifts to the nonmoving party to point out genuine issues of material fact that would preclude judgment as a matter of law for the moving party. *See* Fed.R.Civ.P. 56(e); *Bennett v. Dr Pepper/Seven Up, Inc.,* 295 F.3d 805, 808–09 (8th Cir.2002); *Naucke v. City of Park Hills,* 284 F.3d 923, 927 (8th Cir.2002) (explaining, "a nonmovant must present more than a scintilla of evidence and must advance specific facts to create a genuine issue of material fact for trial.") (citing *F.D.I.C. v. Bell,* 106 F.3d 258, 263 (8th Cir.1997), quoting *Rolscreen Co. v. Pella Prods. of St. Louis, Inc.,* 64 F.3d 1202, 1211 (8th Cir.1995)); *Bailey v. U.S. Postal Serv.,* 208 F.3d 652, 654 (8th Cir. 2000) (nonmoving party "may not rest upon 'mere allegations or denials' contained in its pleadings, but must, by sworn affidavits and other evidence, 'set forth specific facts showing that there is a genuine issue for trial.'") (quoting Fed.R.Civ.P. 56(e)); *Mathews v. Trilogy Communications, Inc.,* 143 F.3d 1160, 1164 (8th Cir. 1998) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). Moreover, the party opposing summary judgment "must make a sufficient showing on every essential element of its claim on which it bears the burden of proof." *P.H.,* 265 F.3d at 658 (quoting *Buettner v. Arch Coal Sales Co.,* 216 F.3d 707, 718 (8th Cir.2000), *cert. denied,* 531 U.S. 1077, 121 S.Ct. 773, 148 L.Ed.2d 672 (2001)). The consequence of a nonmoving party's failure of proof concerning an essential element of the case "renders all other facts immaterial," and in such a case, no genuine issue of fact exists. *Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The court looks to the substantive law to deter-

mine if an element is "essential" to the underlying case. *Id.* Therefore, the movant is entitled to summary judgment where the factual dispute does not affect the outcome of the case under the governing law. *See Jackson v. Arkansas Dept. of Educ., Vocational & Tech. Educ. Div.*, 272 F.3d 1020, 1025 (8th Cir.2001), *cert. denied,* — U.S. ——, 122 S.Ct. 2366, 153 L.Ed.2d 186 (2002) (citing *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505).

The Eighth Circuit Court of Appeals has cautioned that "summary judgment should seldom be used in employment discrimination cases." *See Crawford v. Runyon,* 37 F.3d 1338, 1341 (8th Cir.1994). This exceptional deference shown the nonmoving party is warranted, according to the Eighth Circuit Court of Appeals, "Because discrimination cases often turn on inferences rather than on direct evidence ..." *E.E.O.C. v. Woodbridge Corp.,* 263 F.3d 812, 814 (8th Cir.2001) (*en banc*) (citing *Crawford,* 37 F.3d at 1341; *Conopco, Inc.,* 186 F.3d at 1101) (citing *Snow v. Ridgeview Med. Ctr.,* 128 F.3d 1201, 1205 (8th Cir.1997)), and because "intent" is generally a central issue in employment discrimination cases. *Christopher v. Adam's Mark Hotels,* 137 F.3d 1069, 1071 (8th Cir.1998) (citing *Gill v. Reorganized Sch. Dist. R-6, Festus, Mo.,* 32 F.3d 376, 378 (8th Cir.1994)). Nonetheless, this exercise of judicial prudence "cannot and should not be construed to exempt" from summary judgment, employment discrimination cases involving intent. *Christopher,* 137 F.3d at 1071 (quoting *Krenik v. County of Le Sueur,* 47 F.3d 953, 959 (8th Cir.1995)). The fact remains that "the ultimate burden of persuading the trier of fact that the defendants intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000). Furthermore, "where the unresolved issues are primarily legal rather than factual, summary judgment is particularly appropriate". *Aucutt v. Six Flags Over Mid–America, Inc.,* 85 F.3d 1311, 1315 (8th Cir.1996) (quoting *Crain v. Board of Police Comm'rs,* 920 F.2d 1402, 1405–06 (8th Cir.1990)). The court will apply these standards to Trinity's motion for summary judgment, addressing each of the disputed issues in turn.

## III. LEGAL ANALYSIS

### A. Simonson's Disability Claims

As a preliminary matter, it should be noted that in considering Simonson's discrimination claims, the court will generally make no distinction between claims based on federal law and comparable claims based on state law. This is appropriate because the Iowa Supreme Court has recognized that federal precedent is applicable to discrimination claims under the ICRA, IOWA CODE CH. 216. *See Fuller v. Iowa Dep't of Human Servs.,* 576 N.W.2d 324, 329 (Iowa 1998) (recognizing that Chapter 216's prohibition on disability discrimination is the state-law "counterpart" to the ADA, and that, "[i]n considering a disability discrimination claim brought under Iowa Code chapter 216, we look to the ADA and cases interpreting its language. We also consider the underlying federal regulations established by the Equal Employment Opportunity Commission (hereinafter 'EEOC'), the agency responsible for enforcing the ADA.") (internal citations omitted); *cf. Vivian v. Madison,* 601 N.W.2d 872, 873 (Iowa 1999) ("The ICRA was modeled after Title VII of the United States Civil Rights Act"). Iowa courts, therefore, traditionally turn to federal law for guidance in evaluating the ICRA. *King v. Iowa Civil Rights Comm'n,* 334 N.W.2d 598, 601 (Iowa 1983). Federal law, however, is not controlling. Iowa courts look simply to the analytical framework utilized by the

federal courts in assessing federal law, and federal law should not substitute the language of the federal statutes for the clear words of the ICRA. *Hulme v. Barrett,* 449 N.W.2d 629, 631 (Iowa 1989); *accord Board of Supervisors of Buchanan County v. Iowa Civil Rights Comm'n,* 584 N.W.2d 252, 256 (Iowa 1998) ("In deciding gender discrimination disputes, we adhere to the Title VII analytical framework established in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–04, 93 S.Ct. 1817, 1824–25, 36 L.Ed.2d 668, 677–79 (1973). *See Hy–Vee Food Stores, Inc. v. Iowa Civil Rights Comm'n,* 453 N.W.2d 512, 516 (Iowa 1990).").

The ADA affords protection from discrimination to any "qualified individual with a disability." 42 U.S.C. § 12112(a). The Eighth Circuit Court of Appeals has held that a plaintiff who raises a claim of disability discrimination based on indirect evidence bears the initial burden of establishing a *prima facie* case of discrimination before the burden of proof shifts to the employer to present evidence of a legitimate, non-discriminatory reason. *Yates,* 267 F.3d at 799. If the employer offers evidence of a legitimate, non-discriminatory reason, the burden shifts back to the plaintiff to show that the employer's explanation is a pretext for discrimination. *Id.* "The burden of persuasion remains with the plaintiff throughout." *Id.* citing (*Hutson v. McDonnell Douglas Corp.,* 63 F.3d 771, 776–77 (8th Cir.1995)). To establish this *prima facie* case of discrimination under the ADA and under the ICRA, Simonson must show (1) that she has a condition that qualifies as a disability under the ADA definition, (2) that she is qualified to perform the essential functions of her job, with or without reasonable accommodation, and (3) that she suffered an adverse employment action because of her disability. *Spangler v. Federal Home Loan Bank of Des Moines,* 278 F.3d 847, 850 (8th Cir. 2002); *Conant,* 271 F.3d at 784; *Cooper v.*

*Olin Corp., Winchester Div.,* 246 F.3d 1083, 1087 (8th Cir.2001) (citing *Kiel v. Select Artificials, Inc.,* 169 F.3d 1131, 1135 (8th Cir.1999) (en banc)); *Heaser v. Toro Co.,* 247 F.3d 826, 830 (8th Cir.2001); *Maziarka v. Mills Fleet Farm, Inc.,* 245 F.3d 675, 678 (8th Cir.2001); *Treanor v. MCI Telecomm. Corp.,* 200 F.3d 570, 574 (8th Cir.2000); *Cravens v. Blue Cross & Blue Shield,* 214 F.3d 1011, 1016 (8th Cir.2000).

The ADA defines a "disability" as: "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2). The recent Supreme Court case *Toyota Motor Manufacturing v. Williams,* 534 U.S. 184, 122 S.Ct. 681, 151 L.Ed.2d 615 (2002), governs the analysis of whether Simonson's limitations rise to the level of a "disability" within the meaning of the ADA. The Equal Employment Opportunity Commission ("EEOC") has issued regulations defining the three elements of disability contained in subsection A. *See* 29 C.F.R. § 1630.2 (2002). "Physical or mental impairment" is defined as "[a]ny physiological disorder, or condition, cosmetic disfigurement, or anatomical loss affecting one or more of the following body systems: neurological, musculoskeletal, special sense organs, respiratory (including speech organs), cardiovascular, reproductive, digestive, genitourinary, hemic and lymphatic, skin, and endocrine." *Id.* § 1630.2(h)(1). "Major Life Activities" are defined as "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." *Id.* § 1630.2(i). The ADA's "substantially limits" requirement indicates that an impairment must interfere with a major life activity " 'considerabl[y]' or 'to a large degree.' " *Toyota Motor Mfg.,* 534 U.S. at ——, 122 S.Ct. at 691. Here,

Simonson seeks to establish her *prima facie* case of disability discrimination against Trinity based on subsections (B) (record of impairment) and (C) (perceived disability). The court will begin its discussion by addressing Simonson's perceived disability allegation.

### 1. Perceived disability claim: 42 U.S.C. § 12102(2)(C)

■ Although Simonson does not allege that she is actually disabled within the meaning of the ADA, she argues that Trinity regarded her as disabled as a result of the work-related injuries that left her physically impaired for periods of time. Simonson may pursue such a claim against Trinity without proving she suffers from an "actual" disability because "individuals who are 'regarded as' having a disability, but who are not actually disabled, can still fall within the protection of the ADA." *Conant*, 271 F.3d at 784 (quoting *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 489, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999)). According to the Eighth Circuit Court of Appeals, in "regarded as" actions, the plaintiff must show that the employer or potential employer " 'entertain[ed] misperceptions about the individual—it must [have] believe[d] either that one ha[d] a substantially limiting impairment that one [did] not have or that one ha[d] a substantially limiting impairment when, in fact, the impairment [was] not so limiting.' " *Id.* (quoting *Sutton*, 527 U.S. at 489, 119 S.Ct. 2139). In other words, it is not a question of whether the defendants treated the plaintiff adversely "because of his or her feelings about the plaintiff's physical or mental impairment," *Weber v. Strippit, Inc.*, 186 F.3d 907, 915 (8th Cir.1999), but a question of whether the defendants' treatment of the plaintiff was a result of the defendants' harboring " 'archaic attitudes,' erroneous perceptions, and myths that work to the disadvantage of persons with or regarded as having disabilities." *Brun-*

*ko v. Mercy Hosp.*, 260 F.3d 939, 942 (8th Cir.2001). Consequently, the analysis is the same under both the actually disabled and regarded as disabled claims. *Kellogg v. Union Pac. R. Co.*, 233 F.3d 1083, 1089 (8th Cir.2000) ("Thus, our analysis is the same as under an actually disabled claim, but the question here is whether Union Pacific regarded Kellogg as precluded from more than a particular job.") (citing *Murphy*, 527 U.S. at 521–22, 119 S.Ct. 2133; *Sutton*, 527 U.S. at 491–92, 119 S.Ct. 2139).

In *Brunko v. Mercy Hospital*, the Eighth Circuit Court of Appeals affirmed the district court's grant of summary judgment to defendant on the ground that the plaintiff failed to establish she was disabled within the meaning of the ADA. *Id.* at 942. In that case, the plaintiff worked as a staff nurse for the defendant and injured her back in a work-related accident that required her to undergo surgery. *Id.* at 941. The plaintiff returned to work without restriction, but after experiencing pain in her lower back and left leg, her physician prescribed a permanent lifting restriction not to exceed forty pounds. *Id.* The plaintiff contended that she was substantially limited in the major life activity of working because of the lifting restriction and that the defendant perceived her as disabled because of her physical impairment. *Id.* at 941–42.

In affirming the district court, the Eighth Circuit Court of Appeals held that "a general lifting restriction without more is insufficient to constitute a disability within the meaning of the ADA." *Id.* at 941 (citing *Gutridge v. Clure*, 153 F.3d 898, 901 (8th Cir.1998) (forty-five pound restriction does not limit life activity of lifting) (citing *Snow v. Ridgeview Med. Ctr.*, 128 F.3d 1201, 1207 (8th Cir.1997)) (twenty-five pound restriction does not limit ability to perform major life activity) (citing *Helfter*

*v. United Parcel Serv., Inc.,* 115 F.3d 613, 617 (8th Cir.1997) *Aucutt,* 85 F.3d at 1319)); *see also Mellon v. Fed. Express Corp.,* 239 F.3d 954, 957 (8th Cir.2001) (lifting restriction does not constitute a disability). In addition, the court concluded that the plaintiff was "only precluded from performing a narrow range of jobs" and referred to its prior determination in *Wooten v. Farmland Foods,* 58 F.3d 382, 386 (8th Cir.1995), for the proposition that the major life activity of working "does not mean working at a particular job of that person's choice. An impairment that disqualifies a person from only a narrow range of jobs is not considered a substantially limiting one." *Brunko,* 260 F.3d at 942 (quoting *Wooten,* 58 F.3d at 386) (citations and quotations omitted). In this regard, the court noted that the plaintiff had been employed at another health services company after defendant's and had held subsequent nursing positions at several nursing companies since leaving the defendant.

After engaging in a similar analysis in *Conant v. City of Hibbing,* and arriving at the same conclusion—a lifting restriction does not constitute a disability—the Eighth Circuit Court of Appeals explained, "It logically follows then that being regarded as having a limiting but not disabling restriction also cannot be a disability within the meaning of the ADA." *Conant,* 271 F.3d at 785. Ultimately, the court in *Conant* found that the plaintiff had not produced any evidence that the defendant regarded him as suffering from an impairment that restricted him from engaging in a major life activity. *Id.* The court proceeded to make a distinction between being regarded as unqualified for a job because of a "limiting physical impairment" and being regarded as "disabled" under the ADA. *Id.* "Accordingly, an employer is free to decide that ... some limiting, but not *substantially* limiting, impairments make individuals less than ideally suited

for a job." *Id.* (quoting *Sutton,* 527 U.S. at 490–91, 119 S.Ct. 2139). Similarly, the court in *Brunko* deemed the comment made by defendant's director of human resources during depositions—that the plaintiff was not capable of performing any staff nursing work at the hospital—to be based on the plaintiff's physician's recommendations and "not based on any myths or archaic attitudes about the disabled." *Brunko,* 260 F.3d at 942.

The facts of *Brunko* are similar to the facts of the present litigation. Like Brunko, Simonson worked as a nurse and sustained her injuries in work-related accidents. Both Brunko's and Simonson's injuries caused their respective physicians to prescribe lifting restrictions. The facts diverge, but not significantly, in that Simonson admits that her injuries were temporary, whereas Brunko was released back to work with a permanent lifting restriction. There is no indication in the record that Simonson's injuries have not healed completely and she does not allege that the symptoms continue to manifest themselves. Pl.'s Resistance to Def.'s Mot. for Summary Judgment, at 11. Moreover, the court in *Brunko* held that even with a permanent lifting restriction, Brunko was not disabled or regarded as disabled within the meaning of the ADA. *Id.* at 941–42. While the court recognizes that the pain Simonson endured during the months when she sustained her injuries was severe and limited her ability to perform the full range of her job responsibilities, there is no evidence in the record that Simonson's injuries produced any long-term or permanent disability that would substantially impact her ability to obtain employment of any kind. In fact, both Simonson and Brunko held nursing positions at several nursing companies since leaving their respective employers. Simonson admits that she is currently employed as a registered nurse for Nurse

Finders of Mason City which provides temporary nursing services; as a registered nurse for Medical Oncology and Hematology Associates of Des Moines; and as an independently contracted nurse examiner for Portamedic of Des Moines. *See* Def.'s Stmt. of Undisputed Material Facts, No. 25, 26; Pl.'s Resp. to Def.'s Stmt. of Undisputed Material Facts, No. 25, 26.

Simonson has not presented evidence and has offered absolutely no argument with respect to any substantial limitations on any major life activities caused by her injuries. *See Toyota Motor Mfg.*, 534 U.S. at ——, 122 S.Ct. at 691 (explaining that " '[m]ajor life activities' . . . refers to those activities that are of central importance to daily life."). Even if the court construes Simonson's complaint and resistance to allege she was substantially limited in the major life activity of working as a result of her lifting restrictions, to be "regarded as" such, Simonson would have to argue that she was "restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities." *Cooper v. Olin*, 246 F.3d 1083, 1089 (8th Cir. 2001). To the contrary, Simonson admits that at the time of her termination, she did not have an impairment that prevented her from performing any major life activity and was not under a physician's restriction. Pl.'s Resistance to Def.'s Mot. for Summary Judgment, at 11.

Simonson's alleged evidence of Trinity's mistaken belief that she had a physical impairment or an actual, nonlimiting impairment that substantially limited one or more of her major life activities, is a statement made by Simonson's former nurse manager, Peg Stoolman. *See* Pl.'s Resistance to Def.'s Mot. for Summary Judgment, at 12. Simonson asserts that when asked whether she would be considered for one of the available job positions within Trinity, Stoolman responded, "I'm not sure if that's physically a good choice for you." Def.'s App., at 76. However, during this same exchange, Stoolman told Simonson that she had done a good job and subsequently, after her termination and at Simonson's request, Stoolman wrote a glowing letter of recommendation for Simonson which stated, "She [Simonson] possesses the skills and knowledge base to provide excellent patient care." Pl.'s App., at 48. There is no indication anywhere in the letter that Simonson was physically incapable of performing nursing work. Moreover, the record is devoid of any mention, by Stoolman, of this statement to any Trinity decision-makers. Rather, the record indicates that Simonson's former co-workers regarded her as lazy, not dependable, and not a team player. Def.'s App., at 98, 113, 123. In light of this record, Stoolman's statement amounts to no more than a stray remark. *See Kunzman v. Enron Corp.*, 941 F.Supp. 853, 865–66 (N.D.Iowa 1996) (stating court looks to relationship between the remarks and the decisional process, substance of the statements, "the specificity of the statements both with regard to the actual employment decision at issue such as hiring, promotion, or termination, as well as the relationship between the remark and the plaintiff's situation, and remoteness in time to the personnel decision"). Therefore, Simonson's "regarded as" claim ultimately must fail because she has adduced no evidence indicating that Trinity perceived her as having an impairment that significantly restricted her ability to perform any major life activities. *See Murphy*, 527 U.S. at 524, 119 S.Ct. 2133 (concluding summary judgment is proper where ADA plaintiff fails to show that he is "regarded as unable to perform a class of jobs").

## 2. Record of disability

Next, Simonson contends she is disabled under the ADA because her work-related accidents created a record of a substantially limiting physical impairment. The EEOC regulations state that "a record of such impairment" means "a history of . . . a mental or physical impairment that substantially limits one or more major life activities." *Gutridge*, 153 F.3d at 901 (quoting 29 C.F.R. § 1630.2(k)); *see Weber*, 186 F.3d at 915 ("In order to have a record of disability under the ADA, a plaintiff's medical documentation must show that he has a history of, or has been misclassified as having, a physical or mental impairment that substantially limits one or more major life activities.") (citing 29 C.F.R. § 1630.2(k)). While Simonson's injuries "are evidence of a history of an impairment, they are not evidence of a history of a disability." *Land v. Baptist Med. Ctr.*, 164 F.3d 423, 425 (8th Cir.1999) (concluding plaintiff's allergy did not substantially limit her ability to eat or breathe—major life activities) (quoting *Robinson v. Global Marine Drilling Co.*, 101 F.3d 35, 37 (5th Cir.1996)). Because Simonson admits, and the court concludes as a matter of law, that she is not actually disabled within the meaning of the ADA, and because Simonson has failed to demonstrate that Trinity was under the belief, based upon any medical records or reports made known to it, that Simonson was "disabled" within the meaning of the ADA, her claim of disability must fail on this ground as well. *See Conant v. Hibbing*, 131 F.Supp.2d 1129, 1137 (D.Minn.2000) (granting defendant's motion for summary judgment on plaintiff's ADA claim).

## B. Simonson's ADEA Claim

According to the ADEA, it is unlawful for an employer to "fail to hire or to discharge any individual or otherwise discriminate against any individual . . . because of such individual's age." 29 U.S.C. § 623(a)(1). In considering an age discrimination claim brought under Iowa Code Ch. 216, the court looks to the ADEA and applicable federal law. *See Fisher v. Pharmacia & Upjohn*, 225 F.3d 915, 919 n. 2 (8th Cir.2000) ("The ICRA is interpreted to mirror federal law, including the ADEA") (citing *Montgomery v. John Deere & Co.*, 169 F.3d 556, 558 n. 3 (8th Cir.1999)). Thus, our analysis of Simonson's ADEA claim applies equally to her ICRA claim. An ADEA claim can arise either as a pretext claim, as a mixed motives claim, or as a reduction-in-force ("RIF") claim. *Spencer v. Stuart Hall Co.*, 173 F.3d 1124, 1127 (8th Cir.1999). Each of these types of ADEA claims have slightly different elements. *Id.* (citing *Bevan v. Honeywell, Inc.*, 118 F.3d 603, 609 n. 1 (8th Cir.1997)). Because the parties agree that Simonson's claims are based on circumstantial evidence, rather than direct evidence, we apply the burden-shifting scheme of *McDonnell Douglas Corp. v. Green*, 411 U.S. at 802–03, 93 S.Ct. 1817. *See Yates*, 267 F.3d at 798; *Regel v. K-Mart Corp.*, 190 F.3d 876, 879 (8th Cir. 1999); *Hindman v. Transkrit Corp.*, 145 F.3d 986, 990 (8th Cir.1998). Under this framework, Simonson must first establish a *prima facie* case of age discrimination. *See Yates*, 267 F.3d at 799. If Simonson makes this showing, the burden of production shifts to Trinity to articulate a legitimate, nondiscriminatory reason for any adverse employment action taken against Simonson. *See id.* If Trinity puts forth such a reason, Simonson must then present evidence sufficient to raise a question of material fact as to whether Trinity's proffered reason was pretextual and to create a reasonable inference that age was a determinative factor in the adverse employment decision. *See id.; Reeves v. Sanderson Plumbing Prods.*, 530 U.S. at 147, 120 S.Ct. 2097; *Keathley v. Ameritech Corp.*, 187 F.3d 915, 919 (8th Cir.1999).

At all times, the burden of persuasion remains with Simonson. *See Yates*, 267 F.3d at 799 (citing *Hutson*, 63 F.3d at 776–77).

Simonson alleges in her complaint that Trinity terminated her because of her age in violation of the ADEA. Pl.'s Compl., at 6. However, Simonson concedes that Trinity did not act with discriminatory animus or target her when it closed Two West, when it eliminated her job on Two West, or when her temporary employment position with IDX was eliminated because of restructuring of the business office. Def.'s App., at 073. Simonson acknowledges that Trinity took these steps for legitimate business reasons. Def.'s App., at 070. Therefore, the court construes Simonson's argument in her resistance to Trinity's motion for summary judgment, as well as her deposition testimony, to state a claim for failure to rehire or transfer in violation of the ADEA. *See* Def.'s App., at 073. In *Schiltz v. Burlington Northern R.R.*, 115 F.3d 1407, 1412 (8th Cir.1997), the Eighth Circuit Court of Appeals instructed courts to "vary the elements of the test in accordance with the facts of each individual case." (citing *Texas Dep't. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253–54 n. 6, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)). Thus, for Simonson's failure to rehire or transfer claim, she can establish a *prima facie* case of age discrimination by proving that (1) she is a member of a protected class; (2) her job performance met legitimate expectations of the employer or she was qualified for the positions for which she applied; (3) she suffered an adverse employment action either because she was discharged or not hired for the position she applied for despite her being sufficiently qualified; and (4) she was replaced by or the job for which she applied was filled by a person "sufficiently younger to permit an inference of age discrimination." *Schiltz*, 115 F.3d at 1412 (citing *Kralman v. Illinois Dep't of Veterans' Affairs*, 23 F.3d 150, 155 (7th Cir.), *cert. denied*, 513 U.S. 948, 115

S.Ct. 359, 130 L.Ed.2d 313 (1994)); *see Sheets v. Nat'l Computer Sys., Inc.*, No. CIV.3-99-CV-30091, 2000 WL 33364120, at *5 (S.D.Iowa Dec.7, 2000) (citing *Schiltz*, 115 F.3d at 1412; *Fisher*, 225 F.3d at 919; *Keathley*, 187 F.3d at 919; *Ziegler v. Beverly Enterprises–Minnesota, Inc.*, 133 F.3d 671, 675 (8th Cir.1998)).

■ The ADEA explicitly protects individuals who are forty years of age or older. 29 U.S.C. § 631(a). Simonson was forty-six years old at the time Trinity terminated her employment, or failed to rehire her, and thus falls under the ADEA's protection. Trinity does not contest Simonson's ability to satisfy the first three elements of her *prima facie* case and therefore, the court assumes, without deciding, that Simonson can establish the first three elements of her *prima facie* case. Trinity maintains that Simonson cannot establish the fourth element of her *prima facie* case—that Trinity replaced her with or filled the job positions Simonson applied for with a younger person. In the alternative, Trinity argues that Simonson's termination was the result of a RIF, for legitimate business reasons, which requires Simonson to produce additional evidence that age was a factor in her termination, even after satisfying the elements of an ADEA case involving failure to rehire or transfer. *Spencer*, 173 F.3d at 1128. Simonson disputes Trinity's RIF argument and contends that "the evidence is directly contrary to the existence of a RIF." Pl.'s Resistance to Def.'s Mot. for Summary Judgment, at 12. Therefore, the court will analyze Simonson's claim of age discrimination under both the elements of her failure to rehire or transfer claim, and under Trinity's RIF claim.

First, the court points out that it went to great lengths to plumb the record before it in order to find evidence of Simonson's stated claim of age discrimination. *See Barge v. Anheuser–Busch, Inc.*, 87 F.3d

256, 259–60 (8th Cir.1996) ("A district court is not required to speculate on which portion of the record the nonmoving party relies, nor is it obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim.") (quoting *White v. McDonnell Douglas Corp.*, 904 F.2d 456, 458 (8th Cir.1990)) (per curiam) (quotation omitted). In her deposition Simonson asserts generally, that Trinity hired younger workers to fill the job positions that Simonson, an older employee with over twenty years of service and close to the age of fifty, had applied for. Def.'s App., at 074–75. Simonson baldly accuses Trinity of perceiving her as "damaged goods," and declining to rehire her "Because if I [Simonson] had an injury when I was younger, as I got older they [Trinity] figured I'd have another injury." Def.'s App., at 074. In an effort to bolster her claim and offer direct evidence of discrimination, Simonson alleges she engaged in discussions with friends, who were her coworkers at the hospital, and age was brought up as a factor in these discussions. However, Simonson admits that at no time during these discussions did anyone tell Simonson that they thought age was the reason she did not get rehired. Def.'s App., at 075. Furthermore, Simonson offers no evidence that Trinity's agents, or decision-makers, ever commented on Trinity's alleged intent to phase out its older workers or otherwise made derisive comments about Simonson's age. *See Stafne v. Unicare Homes, Inc.*, No. CIV.97–470 JRT/FLN, 1999 WL 1212656, at *11–12 (D.Minn. Aug.12, 1999) (granting defendant's motion for summary judgment where plaintiff failed to adduce indirect or direct evidence of age discrimination). Although not determinative of the issue, Simonson admits that Trinity continued to employ nurses older than herself after her termination, and Simonson was able to identify at least one job position to which

she applied, Performance Improvement Coordinator, that Trinity filled with someone older than herself. Def.'s App., at 074.

Even after considering the entire record, the court finds that Simonson has failed to establish specific facts that create a genuine issue of material fact for a jury on her ADEA claim. Fed.R.Civ.P. 56(e); *Celotex Corp.*, 477 U.S. 317, 323, 106 S.Ct. 2548 (1986). Simonson has not presented any evidence from which it could reasonably be inferred that her age played a role in her failure to secure other employment with Trinity. *See Schiltz*, 115 F.3d at 1412–13 (affirming summary judgment for defendant, despite plaintiff alleging specific facts regarding age of younger persons hired, where age disparities between plaintiff and persons ultimately hired to fill positions plaintiff applied for, did not raise inference of discrimination because said persons, ages 43, 46, 51, 44, 48, and 47, were not "substantially younger" than plaintiff); *Doerhoff v. McDonnell Douglas Corp.*, 171 F.3d 1177, 1180–81 (8th Cir.1999). Because Simonson has neither established an indirect *prima facie* case nor produced direct evidence of Trinity's discriminatory intent, Simonson's age discrimination claim does not survive Trinity's motion for summary judgment. Because the court finds that Simonson failed to establish her *prima facie* ADEA case involving failure to rehire or transfer, the court will not address Simonson's burden in the context of a RIF. *See Fast v. Southern Union Co.*, 149 F.3d 885, 890 (8th Cir.1998) (" 'the fact that the plaintiff's duties were assumed by a younger person is not enough in itself to establish a prima facie case [in context of RIF].' ") (quoting *Bialas v. Greyhound Lines, Inc.*, 59 F.3d 759, 763 (8th Cir.1995)).

### C. Discharge in Violation of Public Policy Claim

 Simonson also asserts a state-law claim of wrongful discharge in violation of

public policy. In particular, Simonson contends in her complaint that she was terminated for filing a workers' compensation claim. Pl.'s Compl., at 8–9. Iowa courts recognize a cause of action for common-law retaliatory discharge. *See, e.g., Smith v. Smithway Motor Xpress, Inc.,* 464 N.W.2d 682, 686 (Iowa 1990) (recognizing discharge in retaliation for pursuing rights under Iowa workers' compensation laws violates public policy and gives rise to common-law cause of action); *Niblo v. Parr Mfg., Inc.,* 445 N.W.2d 351, 353 (Iowa 1989) (same); *Springer v. Weeks & Leo Co.,* 429 N.W.2d 558, 560–61 (Iowa 1988) (same). The elements of the claim include a showing of: "(1) engagement in a protected activity, (2) adverse employment action, and (3) a causal connection between the two." *Teachout v. Forest City Cmty. Sch. Dist.,* 584 N.W.2d 296, 299 (Iowa 1998). However, Trinity argues that the sole adverse employment action alleged by Simonson is the fact that she was not rehired at Trinity after her positions in Two West and IDX were eliminated for what Simonson concedes as legitimate business reasons. Def.'s App., at 070, 073. After determining that Simonson does not charge Trinity with acting with discriminatory animus in the elimination of her positions, and recognizing Simonson's admission that Trinity never disciplined her as a result of any work-related injury that she sustained or with regard to her application for and receipt of workers' compensation benefits for her injuries, but fully accommodated her work restrictions, (Def.'s App., at 072–73), the court finds that Simonson's cause of action is one for wrongful failure to rehire in retaliation for seeking workers' compensation benefits.[2] *See McMahon v. Mid–America Constr. Co. of*

*Iowa,* No. 99–1741, 2000 WL 1587952, at *2 (Iowa App. Oct.25, 2000).

In its unpublished opinion in *McMahon,* the Iowa Court of Appeals, while acknowledging that Iowa has not recognized a cause of action for wrongful failure to rehire an employee in retaliation for seeking workers' compensation benefits, declined to decide the issue because it found that the plaintiff had "not presented substantial evidence tending to prove his protected activity ·was a determining factor" in the defendant's decision not to rehire the plaintiff. *Id.* at *5. In *McMahon,* the plaintiff, an ironworker and welder, suffered a work-related injury which resulted in his return to work with physician prescribed lifting restrictions, and he subsequently filed a claim for workers' compensation benefits against the defendant. *Id.* at *1. Approximately four months later, in light of the fact that the defendants had run short of work for welders, plaintiff took a voluntary layoff until the defendants had more work. *Id.* The plaintiff had taken voluntary layoffs on two prior occasions and both times he was rehired after he contacted a superintendent about work. *Id.* at *2. However, on this occasion, plaintiff was not rehired after he made inquiries to defendant's superintendents. *Id.* The plaintiff's purported evidence of the defendant's alleged retaliation in *McMahon* were statements employees made to the plaintiff claiming that they heard he was not rehired because he filed a workers' compensation claim; co-employees asked if plaintiff needed assistance after his injury; plaintiff's supervisor complained about having "all of the injured workers assigned to his crew;" and plaintiff alleges "other construction workers with similar skills to his own were hired or

---

**2.** Trinity asserts in its motion for summary judgment that the sole adverse employment action alleged by Simonson, as a basis for her public policy claim, is Trinity's failure to re-

hire her after her positions in Two West and IDX were eliminated for legitimate business reasons.

rehired during the time he [plaintiff] was looking to return." *Id.* at *5.

In analyzing whether there was a casual connection between the plaintiff's filing a workers' compensation claim and the defendant's refusal to rehire the plaintiff, the Iowa Court of Appeals in *McMahon* confirmed that the plaintiff has "the burden to produce *substantial evidence* his [McMahon's] protected conduct of seeking workers' compensation benefits was a *determining factor* in Mid–America's [defendant's] refusal to rehire him." *Id.* at *3 (emphasis added) (citing *Weinzetl v. Ruan Single Source Transportation Co.,* 587 N.W.2d 809, 811). The court defined a factor as determinative "if it is the reason that tips the scales decisively one way or the other, even if it is not the predominant reason behind the employer's decision." *Id.* (citing *Teachout v. Forest City Cmty. Sch. Dist.,* 584 N.W.2d 296, 302 (Iowa 1998) (quoting *Smith v. Smithway Motor Xpress Inc.,* 464 N.W.2d 682, 686 (Iowa 1990))). The court in *McMahon* found the plaintiff's proffered evidence to be unsubstantial, noting that the record did not suggest that the comments about plaintiff's need for assistance or his alleged disability were motivated by retaliatory animus. In addition, the court found the defendant's affirmative contact of one worker who took a voluntary layoff and invitation for him to return to work was an "isolated deviation" from the defendant's policy that "when an employee was laid off, it was the employee's responsibility to contact the various project superintendents to see if work was available when they wished to return to work." *Id.* at *2.

Simonson's present claim for failure to rehire in violation of Iowa public policy is remarkably similar to the plaintiff's case in *McMahon.* Both Simonson and the plaintiff in *McMahon* suffered work-related injuries that necessitated surgery and subsequent lifting restrictions. Simonson filed a workers' compensation claim based on one work-related injury she endured, like that of the plaintiff in *McMahon.* In support of her claim, Simonson alleges she was treated differently after she filed her workers' compensation claim based on Peg Stoolman's statements that Simonson was a good worker "when you [Simonson] were here . . . you were gone a lot." Def.'s App., at 076. In addition, Simonson asserts, despite Trinity's fully accommodating her work restrictions, that Stoolman harbored "ill-will or negative assumptions" towards Simonson because of the health history established by her workers' compensation claim, in light of Stoolman's response to whether or not Simonson would be considered for a position—"I'm not sure if that's physically a good choice for you." Def.'s App., at 076. Moreover, Simonson points out that other workers with similar skills to her own were hired or rehired during the time Simonson worked as a temporary employee in IDX and was pursuing permanent positions with Trinity.

In this case, Trinity and Simonson agree that Simonson made a claim for workers' compensation benefits in connection with her 1994 work-related injury to her right shoulder, which is protected activity under *Springer v. Weeks & Leo Co.* and its progeny. Def.'s App., at 069; *See Springer,* 429 N.W.2d at 560; *Smith,* 464 N.W.2d at 686; *Niblo v. Parr Mfg., Inc.,* 445 N.W.2d 351, 353 (Iowa 1989). Assuming that a cause of action for wrongful failure to rehire in retaliation for seeking workers' compensation benefits is cognizable in Iowa, which the court believes is likely the case, Simonson's claim still fails because she has not produced substantial evidence that her protected activity—filing a workers' compensation claim—was a determining factor in Trinity's decision not to rehire her. *See McMahon,* 2000 WL 1587952, at *5.

With regard to Stoolman's statement about Simonson being gone a lot, there is no factual basis in the record to suggest that Stoolman's statements were motivated by retaliatory animus. Simonson filed her workers' compensation claim in 1994, but continued her employment with Trinity, with accommodation, until her termination in September 1999. Although Simonson did not settle her workers' compensation claim against Trinity until approximately December 1998, Stoolman was not Simonson's exclusive supervisor during this time, but supervised Simonson when she worked in Two North and Two West. Furthermore, Simonson admits that she and Stoolman had a good relationship. Def.'s App., at 071. Stoolman gave Simonson a glowing letter of recommendation at Simonson's request. Thus, Stoolman may have served as a reference for Simonson, but did not play a role beyond this in Trinity's department managers' decision not to re-hire Simonson. Simonson's allegations concerning Stoolman's statement are more akin to a wrongful termination claim based on "absenteeism occasioned by a work-related injury." *See Weinzetl v. Ruan Single Source Transp. Co.*, 587 N.W.2d 809, 811–12 (Iowa App.1998) (citing *Yockey v. State*, 540 N.W.2d 418, 421 (Iowa 1995)) (distinguishing a claim for wrongful termination for pursuing a workers' compensation claim from a claim of wrongful termination based on absenteeism occasioned by a work-related injury). In fact, Simonson states in her resistance to Trinity's motion for summary judgment that she "has amply demonstrated that Stoolman was not happy with the fact that Simonson missed so much work due to her workers compen-

sation claims." Pl.'s Resistance to Def.'s Mot. for Summary Judgment, at 15.

In *Weinzetl*, the Iowa Court of Appeals was faced with the question of whether a wrongful discharge claim based on absenteeism because of a work-related injury violated public policy in Iowa. *Id.* at 812. The plaintiffs asserted that the defendant's application of the company's leave of absence policy to them was not neutrally applied, but with a retaliatory motive, despite the fact that at the time of their termination, the plaintiffs could not physically perform their loading and unloading duties. *Id.* at 811. The Iowa Court of Appeals agreed with the district court's findings and adopted the district court's reasoning in its decision to pronounce that such a claim does not violate the public policy of Iowa. *Id.* at 812 (making no distinction between private and public employees) (citing *Yockey*, 540 N.W.2d at 421 (quoting *Duncan v. New York State Developmental Ctr.*, 63 N.Y.2d 128, 481 N.Y.S.2d 22, 470 N.E.2d 820, 822 (1984) ("The absence of a public employee from his position for a prolonged period unduly impairs the efficiency of an office or agency. . . . To forbid absolutely any detrimental treatment of an injured worker would transform [the workers' compensation law] into a job security clause, . . .")))[3].

Therefore, even if Simonson had pled or raised a wrongful termination claim based on absenteeism occasioned by a work-related injury, under Iowa law, Simonson's termination would not violate public policy. *Id.* (addressing plaintiffs' theory of wrongful termination based on absenteeism because of work-related injury, notwithstand-

---

**3.** The Iowa Supreme Court has warned against "transform[ing] the public policy exception into a 'good faith and fair dealing' exception, a standard we have repeatedly rejected," and insist on proceeding cautiously in contemplating the declaration of public policy to support an exception to the at-will doc-

trine. *Fitzgerald v. Salsbury Chem., Inc.*, 613 N.W.2d 275, 283 (Iowa 2000) (quoting *Burnham v. Karl & Gelb, P.C.*, 252 Conn. 153, 745 A.2d 178, 182 (2000)) ("public policy exception is narrow and courts should not lightly intervene to impair the exercise of managerial discretion").

ing plaintiffs' failure to plead the claim, because plaintiff's raised the issue in their resistance to defendant's motion for summary judgment). Thus, the court determines that a reasonable jury could not find Stoolman's comment regarding Simonson's absenteeism to be substantial evidence tending to demonstrate that Simonson's protected activity was a determining factor in Trinity's decision not to rehire her. Furthermore, the court concludes that Stoolman's other statement concerning Simonson's health history is more appropriately characterized as alleged evidence of Simonson's claim of discrimination in violation of the ADA.

Simonson's assertion that all of the other nurses found work within Trinity after their positions were eliminated when Two West closed, with the exception of Simonson and Betty Berning, does not create an inference that Trinity's decision not to rehire Simonson was because of her workers' compensation claim. According to Simonson, before Two West closed, all of the nurses in Two West, including herself, were told to begin checking the boards and start applying for jobs. Def.'s App., at 070. Stoolman, the acting Nurse Manager of Two West at the time it closed, confirms this rehiring process in her deposition stating, "They [everyone at the unit meeting] could all apply for them [positions on the board] and interview with the appropriate managers for the positions that were available." Def.'s App., at 096. Simonson alleges that she left messages with department managers for those positions she was interested in and was called down to Sue Hanlon's office the last day Two West was open. Def.'s App., at 070–71. Hanlon offered Simonson the IDX job at the same rate of compensation Simonson received in her position on Two West. Def.'s App., at 071.

Thus, Trinity did in fact rehire Simonson after Two West closed. Simonson admits that at the time Hanlon offered her the job, Hanlon informed Simonson that it was a temporary position. *Id.* Thereafter, when Ted Vaughn advised Simonson that Trinity was eliminating her job and she would have to apply for other positions within Trinity, Simonson was in the same position as those persons making application externally with Trinity, not all of which received offers from Trinity. The court finds that Simonson's alleged evidence of failure to rehire is really her reliance on her twenty years of service with Trinity which is not enough to make out a *prima facie* claim. Even when the court construes the facts in the light most favorable to Simonson, and assumes that Trinity rehired all of the other nurses from Two West, the court cannot conclude that such evidence "tips the scales decisively one way or the other," because Trinity rehired Simonson, but only as a temporary employee. *Smith,* 464 N.W.2d at 686.

## IV. CONCLUSION

Simonson admits, and the court concludes as a matter of law, that Simonson is not actually disabled within the meaning of the ADA. Moreover, Simonson has failed to adduce evidence indicating that Trinity perceived her as having an impairment that significantly restricted her ability to perform any major life activities, and the court finds Simonson's "regarded as" claim must fail as does Simonson's claim that her work-related accidents created a record of a substantially limiting physical impairment, because while Simonson's injuries were evidence of a history of an impairment, they did not tend to prove that she had a history of a disability. In addition, the court finds that Simonson has not presented any evidence from which it could reasonably be inferred that her age played a role in her failure to secure other employment with Trinity. Finally, the court finds that Simonson has not presented

substantial evidence tending to prove her filing of a workers' compensation claim was a determining factor in Trinity's decision not to rehire her. For these reasons, the court **grants defendants' motion for summary judgment on all counts. This case is dismissed in its entirety.**

IT IS SO ORDERED.